## MIDDLE GEORGIA & ATLANTIC RY. CO v. BARNETT.

1. A false statement in the testimony of a witness can not be converted into truth by any amount of corroboration as to other matters; for a "fact disproved" is not a fact. An attempt to impeach a witness "by disproving the facts testified to by him" may, or may not, be successful. The charge complained of in the present case was not substantially at variance with the foregoing.

2. The rule of law that an employee takes the risks usually incident to the work in which he is employed does not exempt the master from liability for the death of a servant resulting from the negligent failure of the master to furnish the servant with a safe place in which to work, if, at the time his death was occasioned, he was free from contributory negligence.

3. There was, in the trial of an action by a mother for the homicide of her son, no error in charging the jury that she could not recover without showing that he contributed to her support. An instruction to this effect did not necessarily negative the proposition that it was also essential for her to prove that she was dependent upon the son; and the court's omission to charge upon the subject of dependence will not be held cause for a new trial, when it appears from undisputed evidence that the mother was in fact dependent upon the deceased.

4. The amendments to the plaintiff's petition cured the defects pointed out by the defendant's special demurrer; there was no material omission in stating to the jury the defendant's contentions; the requests to charge were substantially covered by the general charge given to the jury, which as a whole fully and fairly submitted to them the issues involved; the grounds of the motion for a new trial relating to the rejection of evidence present no sufficient reason for reversing the judgment below; and the evidence introduced at the trial, though conflicting, warranted the verdict.

Argued April 26, — Decided May 26, 1898.

Action for damages. Before Judge Hart. Putnam superior court. September term, 1897.

*W. B. Wingfield* and *Watkins & Dean,* for plaintiff in error.
*Hoke Smith & H. C. Peeples* and *W. F. Jenkins & Son,* contra.

LUMPKIN, P. J. This was an action brought by Mrs. Lucinda C. Barnett against the Middle Georgia and Atlantic Railway Company, for the homicide of her minor son, who was in the employment of the defendant as a brakeman. The alleged negligence on the part of the company, upon which the plaintiff claimed the right to recover, was, that it left an open drain under its track in one of its yards, where cars had to be coupled and uncoupled and switched back and forth; it being insisted that such drain, in this condition, was unsafe and dangerous to life, and that it was the duty of the company to have properly covered it up. The evidence was conflicting. That offered in behalf of the plaintiff tended to show that her deceased son, while engaged in the discharge of his duties as brakeman and without fault on his part, stepped into this drain at night and was run down and killed by a moving car of the defendant. The evidence for the latter tended to show that the drain under the track was not a contributing cause to the death of the plaintiff's son; or, if it was, that he himself was at fault and contributed to the injury. The homicide occurred at night, and the parties were at issue as to whether or not the deceased was using a lighted lantern at the time of the catastrophe. It was also a disputed question whether the deceased knew of the existence of the drain, or was sufficiently acquainted with the place and its surroundings to be fairly chargeable with knowledge of the fact that it was there. There was a verdict for the plaintiff. The defendant made a motion for a new trial, on various grounds, which was overruled, and it excepted. The foregoing brief statement, in connection with the additional facts hereinafter set forth, will be sufficient to an understanding of the following discussion of the material questions presented for decision.

1. The court, among other things, charged that "a witness may be impeached by disproving the facts testified to by him at the time of the trial. He may be restored to your confidence by a corroboration of the facts testified to by him at the time of the trial. Whether a witness has been impeached, and, if

impeached, whether he has been restored to your confidence, are questions of fact for the jury to determine." Strictly speaking, there can be no such thing as disproving a fact. A fact is something which is true, and it can never be untrue. The real meaning of the phrase that "a witness may be impeached by disproving the facts testified to by him" is, that he may be impeached by proving that the statements made by him in his testimony are not the truth; and obviously, it must until the end of a trial be an open question for the jury to solve whether or not the testimony of any witness as to any particular matter has been disproved. They, at last, must determine what is the truth of a disputed issue of fact; and where two witnesses are directly in conflict as to a matter concerning which each swears positively and deliberately, the verdict necessarily settles which of the two has been impeached by disproving what he stated on the stand. Of course, a falsehood sworn to by a witness can never by any amount of corroboration of his testimony as to other matters be converted into truth. We therefore understand the rule to be that when two witnesses are directly in conflict, the jury may take into consideration evidence corroborating either as to any material matter, with a view to determining which is to be credited. The charge above quoted was substantially in accord with what is here laid down. Our understanding of its meaning is, that the jury were to take into consideration the testimony of each and every witness; ascertain to what extent it was corroborated as to material matters, and then decide, upon a fair review of all the evidence, what the truth of the case really was. We have no reason to apprehend that the jury were misled by the instructions given them upon this subject or failed to fully and correctly grasp the meaning of the same.

2. It is well settled that an employee assumes the risks usually incident to the work in which he is engaged; and also, that a master is generally under a duty of providing his employee with a safe place in which to work. These two rules of law are not inharmonious. A servant of course takes the risk of being injured by defects when he knows, or in the exercise of ordinary diligence ought to have known, of their existence,

and yet, in disregard of the dangers arising therefrom, goes on with his work. In so doing, he assumes the hazards attendant upon such defects, but he does not assume risk of injury from defects of which he does not know and with knowledge of which he is not chargeable. The duty of the master to furnish a safe place for the servant to work in is not absolute and unqualified. Some kinds of work are necessarily attended with dangers against which the master can not by any degree of diligence provide. In such case, the law does not require of him impossibilities; but if, by exercising ordinary care, he can make safe the place wherein the servant is to labor, it is the master's duty to do so. In any given case the jury must determine from the evidence what were the risks incident to the work in hand; and in arriving at a conclusion upon this subject, the ignorance or knowledge of the servant as to the existence of a defect, and, if he was ignorant, whether his ignorance was or was not due to his own negligence, are all matters for determination by the jury. So, also, it is for them to determine from all the facts and circumstances in evidence whether or not the master, in the exercise of ordinary diligence, could have provided the employee with a safe place in which to do his work, and if so, whether or not the master was negligent in failing to perform the duty of so doing. As we understand the charge given in the present case, it was, as to these particular subjects, on the line just indicated. The judge instructed the jury that the plaintiff's deceased son took the usual risks incident to his employment; and while, in this same connection, the judge also charged concerning the master's duty to furnish the servant with a safe place in which to work, the instruction given left the jury free to determine whether that duty was incumbent upon the defendant in the case at bar, and they were expressly instructed that the right of the plaintiff to recover depended not only upon her showing the company to have been negligent in the manner charged, but also upon her proving in addition that there was no contributory negligence on the part of her son in bringing about his death. The court's instructions, thus carefully guarded, certainly contained nothing of which the defendant could justly complain.

3. The judge further instructed the jury that, before Mrs. Barnett would be entitled to a recovery, it must appear that the deceased contributed while in life to her support. It was alleged that this charge was erroneous, "in that the court placed the right of plaintiff to recover solely upon the ground that if the deceased contributed to the support of plaintiff, her right of recovery would be complete;" and the exception to the charge further alleged that "the court should have further instructed the jury that her right to recover would depend also upon the fact that she was wholly or in part dependent upon the deceased for support." The charge complained of is, as an abstract proposition, unquestionably correct; for a mother can not recover for the homicide of a son without showing that he contributed to her support. This charge did not necessarily negative the proposition that it was also essential for the plaintiff to prove that she was dependent upon her son for a support. According to the decision of this court in *Clay* v. *Central Railroad Co.*, 84 *Ga.* 345, a mother can not maintain an action of this kind without proving both contribution and dependence. Counsel for the defendant in error asked permission to review that decision. It is unnecessary, however, to do so for the purposes of the present case; for it appears from undisputed testimony that Mrs. Barnett *was* materially dependent upon her deceased son *for a support.* This being so, the verdict should not be disturbed, even if the charge above quoted was capable of the construction placed upon it by counsel for the railway company, and without regard to the question whether the decision in *Clay's* case is, as to the matter in hand, sound or not; it being plain from the record that the real matters in dispute at the trial related to other questions, and that there was no dispute on the question of the mother's dependence by which the finding of the jury could have been affected.

4. The remaining questions are of no great importance. As originally filed, the plaintiff's petition was in some respects defective; but after the defendant had demurred to the same, the defects were cured by appropriate amendments. The motion for a new trial alleged error in failing to state with sufficient fullness the defendant's contentions; but we do not think the

charge of the court is open to this criticism, for it presented the matters in dispute in a very clear light. The defendant presented numerous written requests to charge, all of which were substantially covered by the general charge given to the jury; and, as a whole, it fairly and fully submitted to them the issues involved. Some of the grounds of the motion complained of alleged errors in rejecting evidence. There is no merit in any of these grounds, with possibly a single exception, and the admissibility of the testimony therein referred to was at least doubtful and of no controlling weight in the determination of the main issue. As above stated, the evidence was conflicting. It apparently preponderated in favor of the defendant; but the verdict was approved by the trial judge, and as it was directly supported by competent evidence, this court would not be warranted in setting it aside.

*Judgment affirmed. All the Justices concurring.*