## SOUTHERN BAUXITE MINING AND MANUFACTURING COMPANY *v.* FULLER.

1. Where the evidence for the plaintiff makes out his case as laid in his petition, it is not error to refuse to grant a nonsuit.
2. A master is bound to provide for his servant a reasonably safe place in which to work, and is liable to the servant for injuries occasioned by a failure to

perform this duty. even though such failure may have been due to the negligence of a fellow-servant of the one who was injured.

3. The writing introduced in evidence, by which it was urged that the plaintiff was estopped to hold the defendant responsible for its alleged negligence, was, at most, an admission of the plaintiff, susceptible of explanation by him ; and it was not erroneous to refuse to give to the jury instructions not applicable to such a state of facts.

4. The verdict was supported by the evidence, and it does not appear that the court erred in overruling the motion for a new trial.

Argued November 14, — Decided December 11, 1902.

Action for damages.    Before Judge Henry.    Floyd superior court.    August 16, 1902.

*Fouché & Fouché*, for plaintiff in error.    *Dean & Dean*, contra.

CANDLER, J.    This was a suit against a mining company for damages on account of personal injuries alleged to have been sustained by the plaintiff while working as a miner in the employment of the defendant in a tunnel belonging to it.    The petition alleged that, by reason of the negligent failure of the defendant to provide sufficient braces to support the roof of the tunnel, a quantity of clay fell from the roof and struck the plaintiff, causing the injuries described and on account of which suit was brought.    It also alleged that, by reason of his inexperience as a miner, the plaintiff did not know what was necessary to render the tunnel safe, and could not, in the exercise of ordinary diligence, have prevented the injuries which he received.    The defendant in its answer denied that it had been negligent or that the plaintiff was as seriously injured as he claimed, and averred that, if he was injured, it was through the negligence of a fellow-servant and was caused by his voluntary exposure to the dangers incident to the business in which he was engaged, and that he was duly warned of the danger by his fellow-servants and by the agents of the defendant.    It also answered that, on a named day and for a named consideration, the plaintiff had released the defendant from all liability on account of his injury.    The evidence on most of the points in issue was more or less conflicting, but was sufficient to support a verdict for the plaintiff.    The jury found for the plaintiff $900 damages, and the defendant made a motion for a new trial, which was overruled.    To the overruling of its motion, and to the refusal of the court below to grant a nonsuit, the defendant excepted.

1. One ground of exception is that the court below erred in over-

ruling the motion of the defendant for a nonsuit. The evidence for the plaintiff showed that on the day that he was injured he was put to work in a tunnel by one Monahan, who was a foreman of the defendant company, hiring its hands, directing them about their work, and exercising a general control over the affairs of the company at that place. It appeared that the plaintiff was without experience as a miner, never having worked in a mine but on one occasion previously to the night when he was hurt. Monahan instructed him and others who were put to work with him not to "surface" or "trim up" the tunnel, but to give their entire attention to driving it ahead, stating that other employees would do the trimming. At the time when the plaintiff and the men with him began work, the tunnel had been driven in a distance variously estimated at from twelve to twenty feet from the point where the last brace or support had been erected, and for that distance there were no supports to the roof or sides of the tunnel to prevent it from caving in. It had been surfaced, or trimmed, up to the point where the men began work; it looked smooth both on the sides and overhead, and there was nothing in its appearance to indicate danger to one not experienced in such work. From the time that the men began work to the time that the injury to the plaintiff took place, the tunnel was driven two feet further in, and, in accordance with Monahan's instructions, this last two feet was not surfaced. The plaintiff testified that there were no cracks or crevices to indicate to him that there was any danger, but that "it was just as smooth as could be." He further testified that no one at any time gave him any instructions as to how to work in the mine so as to protect himself, or warned him that there was any danger of the tunnel falling in. He was not instructed as to putting up timbers as supports, and no timbers were furnished him for that purpose. There was also evidence for the plaintiff, of an expert who had examined the tunnel in question and the character of the earth through which it was driven, to the effect that the clay at that point was not of such a character as to indicate the danger of its caving in to one not experienced in mining. This witness also testified that when a tunnel was being driven through clay of the character indicated, it was necessary to the safety of the men working therein that the roof of the tunnel should be supported by overhead timbers; that these timbers "ought to be kept as close

as every ten feet up to the face of the tunnel," and that where such was not done the conditions were very dangerous.

The foregoing is a substantial statement of the facts shown by the evidence for the plaintiff on the question as to how he was injured. The declaration alleged that the injury was due to no fault or negligence of the plaintiff, but was solely due to the negligence of the company in its failure to provide sufficient braces to support the roof of the tunnel, that only eight or nine feet of the tunnel from the entrance was so protected, and that the remainder was left fully exposed and liable to cave in. The petition further alleged that the plaintiff was inexperienced and unfamiliar with mining under ground, and did not know what was necessary to render the tunnel safe, and that by reason of the suddenness of the falling of the earth he was unable to avoid the injuries which he received. Inasmuch as the evidence for the plaintiff, as will have been seen, fully sustained the allegations of his petition, there was manifestly no error in refusing to grant a nonsuit.

2. A master is bound to provide his servant a safe place in which to work; and if by reason of his failure to do so the servant is injured, the master is liable to him in damages, even though such injuries may have been contributed to by the negligence of a fellow-servant. If there are dangers incident to an employment which are unknown to the servant, of which the master knows or ought to know, the master must give the servant warning in respect thereto. In the present case the evidence authorized the jury to find that the place in which the plaintiff was put to work was a dangerous one, by reason of the negligent failure of the defendant to support the roof of the tunnel with braces so as to prevent the falling of overhead dirt. It was shown that, from the peculiar character of the clay through which this tunnel was constructed, such failure rendered work in it at the place where the plaintiff was injured exceedingly dangerous, and that the danger was not apparent to an inexperienced man. In the case of *City Council* v. *Owens*, 111 *Ga.* 464, which was somewhat similar to the present case, this court upheld an instruction given to the jury in the following language: "It was the duty of the defendant to furnish a reasonably safe place for this man to work. It was the right of the plaintiff to assume that the place was safe when he was directed to go to it." To the same effect is the able opinion of Pre-

siding Justice Lumpkin, in the case of *Middle Georgia R. Co.* v. *Barnett*, 104 *Ga.* 582, where, on page 584, the following language is used: "It is well settled that an employee assumes the risks usually incident to the work in which he is engaged; and also, that a master is generally under a duty of providing his employee with a safe place in which to work. These two rules of law are not inharmonious. A servant of course takes the risk of being injured by defects when he knows, or in the exercise of ordinary diligence ought to have known, of their existence, and yet, in disregard of the dangers arising therefrom, goes on with his work. In so doing, he assumes the hazards attendant upon such defects, but he does not assume risk of injury from defects of which he does not know and with knowledge of which he is not chargeable. The duty of the master to furnish a safe place for the servant to work in is not absolute and unqualified. Some kinds of work are necessarily attended with dangers against which the master can not by any degree of diligence provide. In such case, the law does not require of him impossibilities; but if, by exercising ordinary care, he can make safe the place wherein the servant is to labor, it is the master's duty to do so. In any given case the jury must determine from the evidence what were the risks incident to the work in hand; and in arriving at a conclusion upon this subject, the ignorance or knowledge of the servant as to the existence of a defect, and, if he was ignorant, whether his ignorance was or was not due to his own negligence, are all matters for determination by the jury. So, also, it is for them to determine from all the facts and circumstances in evidence whether or not the master, in the exercise of ordinary diligence, could have provided the employee with a safe place in which to do his work, and if so, whether or not the master was negligent in failing to perform the duty of so doing." In the view that we take of this case, it is unnecessary to pass upon the question whether or not the injury to the plaintiff was caused by the negligence of a fellow-servant. In *Cheeney* v. *Ocean Steamship Co.*, 92 *Ga.* 726, it was held that the negligence of a fellow-servant does not excuse a master from liability to a coservant for an injury which would not have happened had the master performed his duty; and in the case of *Loveless* v. *Standard Gold Mining Co.*, 116 *Ga.* 427, this court ruled that the negligence of a fellow-servant does not relieve the master from liability to a coservant for an injury which would

not have happened had the master not been negligent himself. In the latter case, this court, speaking through Mr. Justice Fish, said: " That a master is liable for an injury to his servant, caused by the concurrent negligence of himself and a fellow-servant, but which could not have happened had the master performed his duty, is clear." In the case at bar, while the plaintiff assumed the ordinary risks of his employment, and was bound to exercise his own skill and diligence to protect himself, he also had the right to believe that the defendant company would adopt all reasonable means for his safety while engaged in its employment. He was inexperienced and ignorant as to the character and nature of the work at which he was put. He did not know, and did not have the means of knowing, of the danger attendant upon this work, as did the master, and under the peculiar circumstances of this case he could not by the exercise of ordinary care have known of them.

3. The motion for a new trial complains that the court below erred in refusing a written request to give in charge to the jury the following: " A paper dated June 27th, 1899, signed by the plaintiff, has been introduced in evidence. If that paper was signed by the plaintiff for the purpose of deceiving the defendant as to the conduct of Monahan, the defendant's servant in charge of the works, then the plaintiff would be bound by the statements in said paper, whether such statements were true or not." The paper referred to in this request was as follows: "Rome, Georgia, June 27, 1899. I hereby exonerate the Southern Bauxite M. & M. Company from any carelessness or negligence, and in no wise hold them responsible for injuries received by me in the tunnel while in their employ. R. O. Fuller. Witness, D. E. Monahan, M. B. Watts." It appeared from the evidence that this paper was presented to Fuller for his signature while he was confined to his bed from the injuries on account of which he sued. It was brought to his house by Monahan and Watts, both employees of the defendant, and the signing of it by Fuller was entirely without consideration. Fuller testified that he signed the paper without knowing its contents, and did so merely as an accommodation to Monahan, who told him that the paper merely contained an admission from him which would acquit him (Monahan) from negligence and enable him to retain his position with the defendant company, and, at the time of signing the paper, the plaintiff was assured by both

Monahan and Watts that it contained nothing which would prejudice his rights as against the company. This paper was set up in the plea of the defendant as a release from liability, but on the trial it appears that the defendant sought to urge it as an estoppel of the plaintiff to claim that the defendant had been guilty of negligence. We think that at most this paper was only an admission on the part of the plaintiff, and as such was susceptible of explanation by him. The court below properly left it to the jury to decide whether the execution of the paper had been satisfactorily explained by the plaintiff, and there was no error in refusing to charge the jury as requested.

4. On most of the material questions in issue on the trial in the court below the evidence was in conflict. The issues between the parties were fairly submitted to the jury. There was ample evidence to support their finding, and it does not appear that the court below erred in overruling the motion for a new trial.

*Judgment affirmed. All the Justices concurring, except Lumpkin, P J absent.*