## JACKSON *v.* MERCHANTS AND MINERS TRANSPORTATION COMPANY.

|118　651|
|123　200|

It is the duty of the master to provide for his servant a reasonably safe place in which to work, and to that end he is bound to make reasonable provision for the protection of the servant against dangers to which he is exposed while engaged in the work he is employed to perform. For a failure to discharge such duty the master is liable to the servant for injuries caused thereby, and this is true though the injuries result from the concurrent negligence of the master and a fellow-servant of the one injured, where the injury could not have been sustained but for the failure of the master to perform such duty.

Argued July 24, — Decided August 14, 1903.

Action for damages. Before Judge Norwood. City court of Savannah. December 29, 1902.

*Shelby Myrick* and *R. L. Colding*, for plaintiff.
*O'Connor, O'Byrne & Hartridge*, for defendant.

FISH, P. J. Abraham Jackson brought his action for damages, for personal injuries, against the Merchants and Miners Transportation Company. The case is here upon a bill of exceptions sued out by the plaintiff, assigning error upon the granting of a nonsuit. The petition alleged, in substance, that plaintiff was an employee of defendant, and at the time of receiving the injury, about seven o'clock a. m., was engaged in the hold of one of defendant's ships, assisting in storing away lumber; that immediately above the place where he was at work was an open hatchway through which lumber and other freight were being loaded into the ship; that the hatchway was open at the time, so that it was possible for trucks and other heavy objects to fall or drop through it from above upon plaintiff and injure him, unless some person were stationed at the hatchway to give warning to plaintiff or to prevent it; that in order to render the place where plaintiff was at work a safe place it was necessary that a hatch-tender should be stationed at the

hatchway; that it was the custom of defendant to have a hatch-tender there to protect its employees engaged as plaintiff was; that all these facts were known to defendant at the time plaintiff was injured; that at the time plaintiff was at work and injured he was under the belief that there was a hatch-tender above him at the open hatchway, and he was relying upon the custom of defendant to have a hatch-tender there; that it was the duty of defendant to provide a safe place for plaintiff to perform the duties in which he was engaged, and to use the proper safeguards to make the place where he was at work safe from the dangers to which he might be exposed while performing his duty; that defendant failed to have a hatch-tender at the hatchway immediately above the plaintiff upon the occasion when he was hurt, and, in consequence of such negligence on defendant's part, a pair of heavy trucks were thrown or dropped down through the hatchway by some one from above, without warning to plaintiff, and fell heavily upon his foot, breaking three of the bones thereof and otherwise mangling it; that the failure of defendant to have a hatch-tender at the hatchway when the trucks fell upon plaintiff was unknown to him at the time; that plaintiff was exercising all ordinary and reasonable care at the time. The effects of the injury, the age and earning capacity of the plaintiff at the time, were also alleged. Upon the trial the evidence submitted in behalf of the plaintiff tended to show that he had been at work all night in the hold of one of defendant's vessels, assisting in storing lumber; that about seven o'clock next morning, without any warning to him, a pair of heavy trucks were thrown by an employee of defendant down through the hatchway immediately under which plaintiff was at work, falling upon and injuring him as alleged in the petition; that at this time no hatch-tender was at the hatchway; that it was customary for defendant to have a hatch-tender there all the time, whose duty it was to give warning to the workmen below when freight was about to be loaded through the hatchway; that a hatch-tender had been at the hatchway all during the previous night "singing out" and giving such warning; that just before the trucks were thrown down the hatchway the foreman of all the employees engaged in loading the vessel blew, as was customary, a "mouth whistle" out on the dock, as a signal for the hands to quit work for breakfast, and that thereupon the hatch-tender left his place of duty at the hatchway and

was not there when the trucks were thrown down; that plaintiff did not know of the custom to quit work when the whistle blew; that, on account of the noise made on the iron deck above and in the hold while the ship was being loaded, the whistle could not be heard in the hold where plaintiff was, and he did not hear it, and did not know the hatch-tender had left the hatchway, but thought he was still there; that plaintiff could not see what was going on above him; that it was customary for those at work in the hold to quit work for breakfast when the trucks above stopped. There was evidence as to plaintiff's age, earning capacity, expectancy, his injuries, etc.

We think the court erred in granting the nonsuit. In our opinion, the case should have been passed upon by the jury. A master is bound to provide for his servant a reasonably safe place in which to work, and, to that end, must make reasonable provision to protect him against dangers to which he is exposed while performing the work which he is employed to do. For a failure to perform such duty the master is liable to the servant for injuries occasioned thereby; and this is true though the injury be caused by the concurrent negligence of the master and a fellow-servant of the one injured, when the injury could not have been sustained but for the failure of the master to perform such duty. *Cheeney* v. *Ocean Steamship Co.*, 92 *Ga.* 726; *Loveless* v. *Standard Gold Mining Co.*, 116 *Ga.* 427; *Southern Bauxite Mining Co.* v. *Fuller*, Ib. 695. The evidence submitted by the plaintiff in the case under consideration tended to show, that, for the safety of plaintiff and others engaged in work in the hold of the vessel at the time plaintiff was injured, it was necessary that a hatch-tender should be stationed at the hatchway to warn them when freight and other things were about to be thrown into the hold; and if this was so, it was the duty of the defendant company to station a person at the hatchway for that purpose. It appeared that it was the custom of the defendant company to comply with this duty, and a hatch-tender had been at the hatchway all the night previous, giving the necessary warnings. The evidence for the plaintiff, however, showed that the hatch-tender was not at the hatchway at the time the trucks were thrown down and caused plaintiff's injury. If the defendant company placed a hatch-tender at the hatchway to give those working in the hold of the ship the necessary warnings,

and the trucks which fell upon plaintiff were thrown down the hatchway while the hatch-tender was absent in disobedience of the company's instructions, or without its knowledge, and some other coemployee of the plaintiff threw the trucks into the hold and thereby injured the plaintiff, then the company was not liable. Under such circumstances, the doctrine of the fellow-servant rule would apply, as was held in *Ocean Steamship Co.* v. *Cheeney,* 86 *Ga.* 278. The evidence for the plaintiff in the case in hand tended, however, to make a decidedly different case. According to such evidence, while the trucks which injured the plaintiff were thrown down the hatchway when the hatch-tender was away from his post of duty, his absence was caused by the foreman, who had charge of all the employees loading the ship, blowing a whistle for the purpose of signaling the hatch-tender and the other employees to leave off work and go to breakfast. If this was so, then the company, through its alter ego, the foreman, in effect called the hatch-tender away from the hatchway and left plaintiff exposed to the danger of being injured by the trucks or other things being thrown down the hatchway, he not having heard the signal and being at work where it could not be heard, and not knowing that it was customary for the hatch-tender to leave his post of duty when the whistle blew. If the plaintiff exercised ordinary care himself and was injured under these circumstances, the defendant company was liable. In such a case, the failure of the company to have a hatch-tender present to give plaintiff the necessary warnings was caused by its own negligence in calling him away from his post of duty, and in not supplying his place while he was absent. If he was called away by the company, and during his absence a coemployee of the plaintiff, without warning, threw the trucks down into the hold and hurt plaintiff, the company, as we have seen, would still be liable, because the injury would then be the result of the concurrent negligence of the company and the fellow-servant, and it would not have happened had the company performed its duty. *Loveless* v. *Standard Gold Mining Co.,* supra. It follows that the judgment below must be

<div align="right">

*Reversed. All the Justices concur.*