# CASES

### DECIDED IN THE

# COURT OF APPEALS OF GEORGIA

#### AT THE

## MARCH TERM, 1907.

---

### 60. KING MANUFACTURING COMPANY *v.* WALTON.

1. There is no fatal variance between any material allegation of the petition and the proof.
2. An act of the servant within the scope of his duties, entirely harmless except in connection with certain physical conditions of danger caused by the antecedent negligence of the master of which the servant was ignorant when he performed the act, will not, as a matter of law, defeat his right to recover, although it may have contributed in some degree to his injury.
3. Masters owe to their servants the duty of providing them a reasonably safe place in which to work, and of maintaining it in a reasonably safe condition during the employment. This is a positive duty. It is not one of the risks assumed by the servant, and the servant has the right to rely on the fact of its performance by the master.
4. This duty is not discharged in a particular case where the facts show that the master negligently left an excavation on his premises in a dangerous place and condition, where he knew the servant would probably be engaged at night in the proper performance of his duties, and that the master, although he had reason to believe that the servant did not know of the excavation, failed to give him warning in respect thereto.
5. The law is not quick to condemn acts of employees as negligence, when such acts result from a zealous, rather than a careless performance of duty.
6. "Juries have no higher function than to solve mysteries," and perplexing problems of fact are wisely submitted to their decision.
7. The court fully and clearly instructed the jury on the law of negligence and contributory negligence; and the verdict was not contrary to the physical facts of the case, and was warranted by the evidence.

Action for damages, from city court of Richmond county—
Judge Eve. August 7, 1906.

Argued February 5,—Decided March 11, 1907.

*Lamar & Callaway,* for plaintiff in error.

*Austin Branch, A. L. Franklin,* contra.

HILL, C. J.   The plaintiff brought suit for damages resulting
from personal injuries received by him while in the discharge of
his duties as an employee of the defendant.  There was a de-
murrer, which was overruled, and exceptions pendente lite were
filed.   On the trial a verdict was rendered for the plaintiff.   The
defendant filed a motion for a new trial, which was overruled.
The defendant excepts to the decision overruling the demurrer,
and also to the decision refusing a new trial.   In the amended
motion for a new trial, several assignments of error are made as
to the verdict of the jury, as being contrary to certain portions of
the charge, and also, that certain portions of the charge were
erroneous.   These assignments were not argued, and are not cov-
ered by the brief, and will be therefore considered as abandoned.
It was insisted before us that "the verdict was contrary to the
physical facts as disclosed by the evidence, as follows:  Plaintiff
testified, that he was the outside night-watchman, and that his
duties required him to look after the boilers, clean them out, and
fire them up every morning, and have steam ready for the dynamos
and to supply the slashers, and that he also had to keep water in
the boilers; and when there was too much water in the boilers it
would whistle, and when there was not enough it would whistle.
He was injured about a quarter to 5 o'clock Tuesday morning,
February 14.   He had kept a fire in the boilers all of Monday
night before he was scalded the next morning, in order to keep
steam in the pipes and prevent their bursting on account of the
cold weather.   He had tried to revive the steam in the boilers that
morning, and succeeded with two of them, but the other he failed
to make hold water, after he had cleaned the clinkers out of the
furnace, and then went to the blow-off valve, located on the out-
side of the brick wall which enclosed the boilers, to see if he could
find out where this particular boiler was leaking.   This blow-off
valve was about two feet above the ground, in the pipe which led
from the boiler that failed to generate steam.   He caved into the
hole which had been dug into the ground around this pipe, where
it led down to a horizontal waste-pipe.   This blow-off valve was
used only to empty the water from the boiler, and not to put water
into the boiler.   The boiler was supplied by water from pumps
located in another part of the structure.   He did not turn the
valve, but got his hands on it, and found it was shut.   Then he

knew it was burst. Gresham, master mechanic, testified, that he reached the boiler at half-past five on the morning plaintiff was injured, and found the blow-off valve about half open and the water running out, and that the water had got below the safety plug in the boiler, and that he immediately shut off the water and drew the fire, to keep from burning the boiler. The blow-off valve could not have turned itself, but required some human agency to turn it. The leak in the pipe was below the valve, and the valve was between the leak and the boiler. The leak in the pipe at that time would not have emptied the boiler without the valve being open. Reese, the foreman under the master mechanic, testified, that the water from the boiler had to pass the valve before it got down to the crack in the pipe; and, when the valve was shut off, the leak, which was below the valve, would not have any effect on the water in the boiler. So long as the valve was shut and closed, the water could not get to the leak. The blow-off valve has nothing to do with regulating the water or steam or anything else in the boilers. No water could get to the crack unless the valve was open. It would be impossible unless the valve was out of fix, and he was sure it was in good fix; and if the valve had been left open all day, the night-watchman could not have fired up at all, as it would have let out all the water. If that boiler had been heated up, and furnished heat and steam all night long, Monday night, and up to the time of the injury, then that valve could not have been open; for if the valve had been open from Monday evening, or any time Monday night, up to 5 o'clock that morning, no steam would have been generated in there at all, and the boiler would in that case have burned out before 4 o'clock in the morning. I am a practical mechanic.— (a) The fact that plaintiff had been generating steam with the boiler in question all Monday night, without the boiler blowing up, proves conclusively that the blow-off valve, which was used only for emptying the boiler, had not been open during the night. (b) The valve was not out of fix, and could not turn itself, but required some human agency to turn it. (c) The valve closed prevented any water from reaching the crack in the pipe, which was on the other side of the valve from the boiler. (d) Plaintiff says he found the valve closed and the hole full of hot water. (e) The hot water in the hole below the valve and around the leak could not have been the accumulations from

the day before; for it was outside, exposed to the air, during a very cold spell of weather. (*f*) Some human agency necessarily opened the valve and allowed the water to reach the crack in the pipe below the valve. The night-watchman was supposed to be the only human agency on the premises, and his explanation of the water from the boiler filling the hole through the burst pipe will not reconcile with the undisputed physical facts; for water will not flow through a closed valve. (*g*) Some human agency must have opened the valve before the water could have reached the leak and filled the hole. Whether this human agency was the plaintiff, or a trespasser on the premises of the mill, it would be chargeable to plaintiff's negligence, and defeat a recovery. (*h*) The only reasonable hypothesis upon which the physical facts can be explained is that the plaintiff, finding too much water in the boiler, had turned the blow-off valve, to let the water from the boiler, and, when the water got low in the boiler, had gone back to shut off the valve and found the hole full of hot water. If this is the truth, his own negligence was the proximate cause of his injury." "Said verdict is contrary to the evidence, because it appears, from plaintiff's testimony, that at the time he went to the blow-off valve, where he slipped into the hole of hot water, he had his lantern with him, and that there was no trouble or defect with the lantern. It was a good lantern and cast a light, except in the steam, and he could see the steam before he got to it. If plaintiff could see the steam, this was sufficient to put him on notice of danger; and, by the exercise of ordinary care and diligence, he could have avoided the accident."

We have thus given in full the facts set out in the ground of the motion illustrating the controlling issues in the case. Based upon these facts, and the law applicable thereto, the plaintiff in error insists that it is entitled to have the verdict set aside and a new trial granted, (1) because the verdict is not only without evidence to support it, but is positively contrary to the undisputed physical facts in the case; (2) because plaintiff was unquestionably and indisputably guilty of such contributory negligence as would defeat his recovery; (3) because there is a fatal variance between certain material parts of his declaration and the proof. We will consider these grounds in the inverse order in which they are here stated.

The variance between the allegation and the proof, which is

claimed to be fatal, is seen by reference to paragraph 13 of the petition and to the evidence referring to the same subject. In this paragraph it is alleged that on the morning of his injury, he "noticed that he was not getting much steam in one of the boilers. He raked the fire and threw in coal,—did every thing he knew to generate the usual amount of steam in said boiler, but to no effect. Thereupon, he determined to go to the rear of the boiler and furnace, *loose the blow-off valve,* and let the steam out of said boiler, in order that he might find out the trouble. . This plaintiff did." In his testimony he says, "*I did not turn the valve.* I got my hands on it and found it was shut, and then I knew it was a burst." The statement made in the paragraph, taken alone, might be construed to mean that he did "loose the blow-off valve," and so construed, it would present a variance, as against the statement in his testimony that he did not turn the valve, but got his hands on it and found that it was shut. And if his right to recover was dependent materially upon the act thus pleaded and proved, it would constitute a fatal variance. We can not say, however, that his right to recover depended solely on the fact whether he did or did not loose or turn the valve. We also think that it would be giving a too narrow construction to the plaintiff's allegation to say that he alleged unequivocally that he opened the valve. He did not allege in paragraph 13 positively and distinctly that he opened the valve. On the contrary, this paragraph, construed in connection with paragraph 17, would fairly give rise to the inference that he did not mean so to state; for in the latter paragraph he says that he "walked to the rear of the boiler and furnace, for the purpose of blowing the steam out of said boiler and furnace," and "stepped into said hole of hot water, and was thereby injured." These two paragraphs, construed together, leave the allegation on this point in doubt, and his evidence clears up this doubt by the positive statement that he did not turn or open the valve.

It is said that the plaintiff was guilty of such contributory negligence as would defeat a recovery, even conceding that the defendant was negligent in leaving the hole around the pipe near the blow-off valve from Saturday evening until Tuesday morning, the time he was injured; because, by ordinary care, he could have avoided the consequences to himself caused by this negligence. In support of this proposition, it is insisted that the plaintiff's own

negligence was the effective and leading cause of the injury, the specific acts of negligence relied upon being, that he must necessarily, as he alleged in paragraph 13 of his declaration, have turned the valve which allowed the hot water to escape from the boiler and thus reach the crack in the pipe below the valve, and thus leak out and fill up the hole; and that as the valve could not be turned without some physical agency, it must necessarily be accepted, as a fact, that either the plaintiff himself turned the valve, or negligently allowed or permitted some trespasser to turn it, thus permitting said hole to fill up with hot water; and that in either event his injury was the result of his own negligence. We are not prepared to hold, as a matter of law, under the circumstances of this case, that if the plaintiff did turn the valve, it was an act of culpable negligence. He had noticed that he was not getting much steam in the boiler from which this pipe led. It was his duty to find out where the trouble was. "If there was any trouble with the boilers, I was told to see what it was, if I could, and report it." And if he did turn the valve in an honest effort to find out where the trouble was, we can not hold, as a matter of law, that such act amounted to contributory negligence. It must be borne in mind that the plaintiff did not know of the hole which had been left around the pipe; nor did he know of the break in the pipe below the valve. The turning of the valve and permitting the hot water to go down through the pipe involved no danger whatever, if the pipe had not been broken below the valve and if the hole had not existed around the pipe. Without knowledge of the dangerous conditions existing, he had the right to assume that they did not exist, and could not properly be chargeable with negligence in acting according to such assumption. The effective and producing cause of the plaintiff's injury was not the turning of this valve and permitting the hot water to flow down, but the negligence of the company in permitting the crack to remain in the pipe, and the hole to be left open around the pipe. These two things concurring made the act of turning the valve, otherwise harmless, dangerous; and the plaintiff, if he did turn the valve, was ignorant of the danger resulting therefrom.

It is not the law that an act of an employee in the zealous discharge of his duties, which would be entirely harmless but for the preexisting negligence of the master, is such an act of culpable negli-

gence as would bar his right to recover. The law is not quick to condemn an act of a faithful servant resulting from a zealous, rather than a careless, performance of his duties. And if the plaintiff in this case did, as a matter of fact, turn this valve, thus permitting the water to flow down and out, if he might reasonably have thought that the turning of the valve would result in no danger, but would enable him to find out the cause of "the trouble with the boiler," the jury might very well have found that his act was one of diligence and not negligence. If, in this case, the servant's act in turning the valve operated upon and rendered actively dangerous the physical conditions previously created by the master's antecedent breach of his obligation, and such act was one of negligence on the part of the servant, he can not recover. But if the act of the servant was not an act of negligence, and but for such dangerous conditions would have been harmless, the master is liable. The foregoing propositions on the subject of contributory negligence, we believe, are based upon sound reasoning, and are supported by authority.

A suit by an employee will not be barred on the ground that he was guilty of contributory negligence in respect to the act which was the real cause of his injury, unless it is shown that he knew, or ought to have known, of the conditions which rendered the act so done an imprudent one. 1 Labatt on Master & Servant, §319. "Negligence can only be affirmed in respect to situations and conditions known to the party to whom it is imputed." Brown v. Louisville R. Co., 111 Ala. 275. "The mere fact that if the servant had not done a certain act he would not have been injured is, of course, not a bar to his maintenance of an action, if that act is not a culpable one, considering the circumstances." 1 Labatt on Master and Servant, §323. The employer is not allowed to escape responsibility where the intervening act of the employee, although it may have contributed to the cause of the injury, was done without knowledge that it would be dangerous, and would not have been dangerous but for the pre-existing physical conditions of danger due to the employee's negligence. Therefore, if we concede that the plaintiff in this case did in fact turn open the valve so as to permit the hot water to escape and fill up the hole around the pipe, such an act could not prevent his recovery, where it is clear that he was ignorant of the existence either of a crack in the

pipe or of the hole; which physical facts and conditions were due to the antecedent negligence of the defendant. Discarding all complex and subtle discussion of the question of causation, intervening or proximate, of the injury, it is perfectly plain that the injury in this case could not have taken place without the breach of duty by the master in digging the hole around the pipe, and in allowing it to remain, without warning to the servant of its existence, and with the knowledge that the servant would be exposed, in the discharge of his duty, to the danger that might result. This was the causa sine qua non of the injury in this case. We have dwelt at some length on this subject because of the position of the learned counsel for the plaintiff in error, that there was no reasonable solution of the evidence, other than the assumption that the plaintiff did in fact turn open the valve on the pipe, and that this was an act of contributory negligence which should prevent his recovery.

It is next insisted, that if the plaintiff did not himself turn on this valve and permit the water to escape into the hole, he must have allowed some trespasser to come on the premises and do so, and that this would have been an act of negligence on his part which would defeat recovery. We are inclined to think that this suggestion is too improbable for serious consideration. But even if it were true, it would not, as a matter of law, prevent a recovery. Impossibilities are impossible, and the law neither requires nor expects their performance. The presence of a trespasser might have been entirely consistent with the plaintiff's discharge of duty. He could not be present at every point of the premises or prevent every possible trespass.

It is also insisted, that the plaintiff was furnished by the defendant with a lantern for the purpose of making "night the same as day to him upon the defendant's premises;" that this lantern was in good condition, and that its light was sufficient to put him on notice and cause him to investigate before stepping into the hole of hot water; that it did permit him to see the steam arising from around the pipe, and that the rising steam ought to have given him warning of the danger. We think the light of the lantern is somewhat magnified by the distinguished counsel when he claims that it "made night the same as day." It was poetic license that authorized Portia to say to Nerissa, "How far that little candle

throws his beams!" The jury, probably being men of practical experience, might have remembered that the light of a lantern was extremely limited as to area, and intensified the darkness outside of such area, and although it did cast a light *on* the steam around the pipe, it did not cast a light *through* the steam so as to disclose the hole, or clearly show from whence the steam came. Light can not penetrate vapor so as to discover physical objects located within and enveloped by it. Therefore, the steam, although it might have given notice of some trouble with the pipe, did not necessarily give notice of the existing trouble, to wit, the hole of hot water. The steam was more probably coming from the crack in the pipe than the hole in the ground.

In the next place it is insisted with a great deal of earnestness, by the very able counsel for the plaintiff in error, that the verdict is without evidence to support it, because it is positively contrary to the undisputed physical facts of the case; that these physical facts prove that it was impossible for the plaintiff to have been injured in the manner in which he says he was injured. The plaintiff testified that he was injured by the caving in of the dirt around the hole, and his feet falling into the hot water. He does not say how the water got into the hole, though he does say that the valve was shut when he put his hand on it. It is true that the water could not have gotten down into the pipe below the valve if the valve had been shut securely and was itself in a perfectly sound condition. We are not called upon to suggest any theory explaining the presence of the water in the hole. This was a question for the jury. Difficult and perplexing questions of fact are committed by the wisdom of the law to the solution of the jury. The great Chief Justice who but this very week left us, to solve the last great mystery, declared, that "juries have no higher function than to solve mysteries." *Central Railroad* v. *Rouse,* 77 *Ga.* 407. And this wise statement has been approved by Justice Cobb in *Southern Ry. Co.* v. *Webb,* 116 *Ga.* 164. With the very limited practical knowledge we possess on such questions, we might, however, suggest several ways in which this hot water might have gotten into that hole. The valve might have been partially open all night. The crack in the pipe was very small. The water might have been constantly flowing slowly from the boiler, its intense heat lasting some time because, although the night was very cold, the

hole of water was in proximity to the heat from the boiler and furnace; or the valve itself might have had a slight crack through which the hot water gradually flowed. It may have been true that the plaintiff did turn the valve himself, but this hypothesis is not invulnerable, in view of the fact that he stated that his feet fell at once into the water, hardly giving sufficient time, between the turning of the valve and falling into the hole, for the water to run through the very small crack in the pipe and fill up the hole. But we do not think it was incumbent upon the plaintiff to clearly explain how the water got into the hole. He could have recovered under the facts short of that proof. The great practical, controlling facts were that the water was in the hole, in a scalding condition, and both the crack and the hole had been left there by the master without warning to the servant, although the master knew that in the discharge of his duties the servant would be about the place of danger at night with only the light of the lantern to save him from probable injury.

It seems to us in this case that the master did not measure up to the full performance of his duty as imposed upon him by law. It is an elementary principle that masters owe to their servants the duty of providing them a reasonably safe place in which to work, and of maintaining it in a reasonably safe condition during the employment. This is a positive duty which the master owes, and the servant has a right to assume that it will be fully performed. 20 Am. & Eng. Enc. of Law (2d ed.), 55, 56. If there are any holes or excavations on the premises, about or over which the servant must pass in the course of his work, the master must take reasonable precaution to protect the servant from injury, by erecting proper barriers, or otherwise; and if he neglects to do so, he is liable in case the servant is injured by reason thereof. Indiana Pipe Co. *v.* Newbaun, 21 Ind. App. 361; Frye *v.* Bath Gas Co., 94 Maine, 17. If there are dangers incident to an employment, unknown to the servant, of which the master knows or ought to know, he must give the servant warning in respect thereto. Civil Code, §2611. When the servant injured did not know and had not equal means of knowing of the danger, and by the exercise of ordinary care could not have known thereof, he can recover. Civil Code, §2612. By the undisputed facts in this case it is clearly shown that the master knew of the existence of the danger, permitting it

to remain for three days, did not inform the servant of its presence, and knew that the servant, in the discharge of his duties, would be exposed to the danger, and that the servant did not know of the danger, and, by the exercise of ordinary care, could not have found it out, as he was the night-watchman and was not on the premises during the day.

There may be mysteries in this case. There may be some doubt as to how the hot water got from the boiler, past the valve, and into the hole; but there is one fact that is clear, and that is that the employee, when hurt, was in the line of his duty, and was trying to find out "the trouble," in order that he might save his master's property from threatened injury. Possibly the jury, in solving the perplexing mystery of the presence of the hot water in the hole, gave the benefit of any doubt which may have been on their minds to the vigilant employee. The law on the subject of negligence and contributory negligence was fully given in charge by the learned trial judge. The verdict of the jury was consistent with reasonable inferences deducible from the evidence, was not inconsistent with the physical facts and was approved by the court. This court will not disturb the judgment refusing to grant a new trial.                          *Judgment affirmed.*