### 14482.   OTIS ELEVATOR COMPANY *v.* ROGERS.

The charge of the court as to the duty of a master to furnish a safe place to work was not cause for a new trial.

For no reason assigned did the court err in overruling the motion for a new trial.

DECIDED DECEMBER 11, 1924.

Damages; from Fulton superior court—Judge E. D. Thomas. March 17, 1923.

Rogers sued Otis Elevator Company for damages, and in substance alleged that, in the line of his employment as a general installer of elevators, he was engaged in work upon an elevator; that, with his helper, he was engaged in setting up a post inside an elevator-shaft; that in properly setting, bolting, and nailing the post it was necessary to have some footing inside the elevator-shaft, and it was the practice of the elevator company to have the elevator move up and down for the work, and to have the employees stand upon the top of the elevator for this purpose in order to do the work of erecting and fastening the posts, and the company's superintendent ordered that this be done; that it was the custom and practice of the employees to stand upon the top of the elevator, especially in doing such work as erecting posts, and this way of doing the work was ordered by the superintendent; that, accordingly, the elevator was moved up so that the plaintiff and his helper could stand upon its top to do the work he was ordered and required to do by the superintendent; that the top of the elevator consisted of a strong wire netting, stretched between and fastened to iron rods, which were to be attached with bolts firmly, so as to make the same hold securely and prevent the top from slipping off; that, as was the custom and practice, in the exercise of ordinary care, assuming that the same would be ordinarily and reasonably safe, and as ordered by the defendant through its superintendent, knowing that the same, properly bolted, would easily hold both himself and his helper, he stepped upon the top of the elevator; that, because the defendant had negligently failed to furnish him

with a safe place in which to work, and had negligently failed to bolt or in any way fasten the elevator top, but, on the contrary, had loosely laid the said top without any fastening or bolts thereon, it slipped when plaintiff stepped on it, there being no support for it, and the iron rods not being in any way bolted, and the entire work fell through, carrying plaintiff with it to the bottom of the elevator and permanently injuring him; that the defendant was negligent in failing to furnish him with a safe place at which to work, and in failing to exercise ordinary care in furnishing machinery and appliances equal in kind to those in general use, and reasonably safe for all persons who operated it with ordinary care and diligence; that "there were latent defects in this employment and in this machinery," unknown to the plaintiff, which the defendant knew of, or should have known, and of which the defendant failed to give the plaintiff any warning whatever; that the top of said elevator upon which he was ordered to work appeared to fit properly and appeared to be in safe condition, there being nothing to suggest that it was loose in any way, and it would have required a very minute and detailed inspection on the part of the plaintiff to have discovered that the iron rods to which the wire netting was attached were not properly bolted and fastened to the angle rods; that plaintiff was intent upon his work and absorbed in his work of erecting said posts, and had nothing to call his attention to the fact that said top was not fastened or bolted on, and such observation as he had the opportunity to and did make would not disclose any defects; that he did not know and had not equal means with defendant of knowing of the failure to properly fasten said top, and by the exercise of ordinary care could not have known thereof; that the defendant and its superintendent were negligent in furnishing him an unsafe place at which to work, in that the said top was dangerous and, being unbolted, would not bear the weight of the plaintiff in standing upon the same; that the same was the place at which plaintiff was directed and ordered to work, and that the appearance of said top, lying smoothly and evenly upon the angle irons, was deceptive, and it had the appearance of being bolted and fastened on, when as a matter of fact it was not, and the least weight or motion of the plaintiff upon the top of the elevator would cause the same to slip and fall into the shaft, which it did upon his stepping upon the same, and in so doing he was permanently injured.

The defendant by its plea and answer denied generally the allegations contained in the plaintiff's suit. Upon the trial of the case the verdict was in favor of the plaintiff. In the defendant's motion for a new trial error is assigned upon the refusal of timely written requests to charge as follows: (*a*) "Under the disputed evidence in this case the plaintiff is not entitled to recover." (*b*) "Under the undisputed evidence in this case no negligence has been shown for which the defendant is liable under the law of Georgia." (*c*) "The undisputed evidence in this case shows that the plaintiff, T. I. Rogers, assumed the risk of the happening of the event or events which produced his injury." (*d*) "Under the evidence in this case Radford, whose negligence is complained of, was a fellow servant of T. I. Rogers, the plaintiff, and the plaintiff, therefore, is not entitled to recover in this case." (*e*) "Under the undisputed evidence in this case, Radford, the foreman, was a fellow servant of T. I. Rogers, the plaintiff, and there can be no recovery in this case under the evidence for any alleged act or acts of alleged negligence of the said Radford while engaged in the performance of his duties as a servant and employee and doing the work of a servant and employee." (*f*) "Under the undisputed evidence in this case it appears that the work in which the plaintiff, T. I. Rogers, was engaged was the construction or building of a system of elevators in the plant of the Bibb Manufacturing Company, at Columbus, Ga., and under the law, therefore, the plaintiff, T. I. Rogers, assumed whatever risks were incident to and connected with such work, and if any such risks caused the injuries for which he sues, he can not recover in this case." (*g*) "If you believe from the evidence that the plaintiff was injured by the failure to bolt or otherwise securely fasten the top on the elevator, and if you further believe from the evidence that the failure to fasten or bolt the wire top of the elevator was the act of a fellow-servant of the plaintiff, and that failure to fasten the top of the elevator was the negligent act of a fellow servant of the plaintiff, nevertheless the plaintiff can not recover in this case, the law being that a servant of a master can not recover damages from the master on account of the negligence, if there be such, of another servant of the master, employed about the same business as the plaintiff for the master." (*h*) "If there are two ways of doing an act, one way safe and the other way unsafe, the law requires the servant to use the safe way;

and if the servant uses the dangerous way and in consequence thereof is injured, he can not recover." (*i*) "If the plaintiff had the choice of securing a board to place across the top of the elevator to form a support for him to stand upon while doing his work, and failed to do so, he can not recover, provided you believe that way of doing the work was a safe way, and the way he selected was a dangerous way."

Error was assigned upon the following excerpts from the charge of the court: (*a*) "I charge you that the plaintiff in this case can not recover if his injuries were caused solely by the negligence of a fellow servant." (*b*) "Where an employee is confronted with two methods of doing a certain thing, the one safe and the other dangerous, he owes a duty to his employer to pursue the safe method, and a departure from the safe method will prevent his recovery in the event he is injured; that is, any intentional or conscious departure—any departure that was inconsistent with ordinary care." (*c*) "This suit is based by the plaintiff upon the alleged negligence of the defendant; that is to say, the plaintiff says that he was injured, and was injured through the negligence of the defendant, acting through its vice-principal or alter ego." (*d*) "He specifies that the defendant was negligent in failing to furnish the plaintiff a safe place to work. He further says that the defendant was negligent in that it negligently failed to furnish plaintiff a safe place to work. . . He also says that the defendant was negligent in that said Radford, the defendant's superintendent, was negligent in [not] furnishing plaintiff a safe place at which to work." (*e*) "The master is bound to exercise ordinary care in the selection of his servants, and not to retain them after knowledge of incompetency." (*f*) "He (the master) must use like care (ordinary care) in furnishing machinery equal in kind to that in general use, and reasonably safe for all persons who operate it with ordinary care and diligence." (*g*) "In suits for injuries arising from the negligence of the master in failing to comply with the duties imposed in the preceding section, it must appear that the master knew or ought to have known of the incompetency of the other servant." Error was assigned also upon the rulings on objections to certain evidence. The motion for a new trial was overruled, and the movant excepted.

*Bryan & Middlebrooks, W. R. Tichenor, J. C. Davis,* for plaintiff in error.

*Reuben R. & Lowry Arnold, E. C. Hill,* contra.

LUKE, J. (After stating the foregoing facts.) Error is assigned upon the following excerpts from the charge of the court, to wit: "He [the plaintiff] specifies that the defendant was negligent in failing to furnish the plaintiff a safe place to work. . . He further says that the defendant was negligent in that it negligently failed to furnish plaintiff a safe place to work. . . He also says that the defendant was negligent in that said Radford, the defendant's superintendent, was negligent in [not] furnishing plaintiff a safe place at which to work," upon the grounds that "the court did not at any place in its charge, as movant contends, explain to the jury that it was the defendant's duty to furnish to the plaintiff a reasonably safe place to work, and not absolutely a safe place to work or a place absolutely safe to work;" the movant contending that "the jury naturally got the impression, from the language used by the court in its charge, that it was the duty of defendant to furnish the plaintiff a place to work that was safe, and not a place to work that was reasonably safe." This particular assignment of error caused this court to propound to the Supreme Court the following questions, to wit:

1. "In a suit against a corporation for damages on account of personal injuries to an employee of the defendant, where one of the issues was as to whether or not the master furnished a proper place for the servant to work, was it error for the judge to charge that the master should furnish the servant a 'safe place' at which to work, or should he have charged that it was the duty of the master to furnish a 'reasonably safe place?'" See *King Manufacturing Co.* v. *Walton,* 1 *Ga. App.* 403 (3) (58 S. E. 115); *Pelham Mfg. Co.* v. *Powell,* 6 *Ga. App.* 308 (2) (64 S. E. 1116); *Eagle & Phœnix Mills* v. *Moncrief,* 17 *Ga. App.* 10 (1, 1 *a*), 24 (1), 25, 26, 27, 28 (86 S. E. 260); *City of Atlanta* v. *Trussell,* 21 *Ga. App.* 351 (94 S. E. 649), and citations; *Betts* v. *Hancock,* 139 *Ga.* 198 (4), 205 (4) (77 S. E. 77); *Jackson* v. *Merchants & Miners Transportation Co.,* 118 *Ga.* 651 (45 S. E. 254); *Southern Bauxite Mining & Mfg. Co.* v. *Fuller,* 116 *Ga.* 695 (43 S. E. 64).

2. "In a suit by an employee against a corporation for personal injuries, where the petition alleges that the defendant 'negligently

failed to furnish the plaintiff a safe place at which to work, and negligently failed to furnish appliances reasonably safe;' that defendant 'was negligent in furnishing plaintiff said unsafe place to work;' and further alleges that 'plaintiff in the exercise of ordinary care assumed that the same (the place of work) would be ordinarily and reasonably safe for that purpose,' and where the evidence shows that the plaintiff was engaged at work placing posts for the gates of an elevator, and the vice-principal of the corporation directed the plaintiff, in doing this work, to use the top of the elevator as a platform, and the evidence further shows that as the servant was endeavoring to place one of the posts in position he stepped on the top of the elevator, which was not properly fastened and turned, and he fell through and was precipitated to the floor of the elevator, was it error for the court to charge the jury that the master should furnish the servant a 'safe place' at which to work, or should he have charged that it was the duty of the master to furnish a 'reasonably safe place?'"

3.  "If in answer to either of the preceding questions the court says that it was error not to charge that the master should furnish to the servant a 'reasonably safe place' in which to work, was this error rendered harmless by the fact that the judge, whenever he charged the jury that it was the duty of the master to furnish a 'safe place' to work, always coupled it with the further instructions that before the plaintiff could recover, the failure of the master to furnish a safe place at which to work must be negligence?"

The Supreme Court evenly divided upon the answer to these questions, and the case was returned to this court without instructions.    Russell, C. J., Beck, and Gilbert, JJ., entertained the following views:  "We are of the opinion that a non-delegable duty of the master is to use ordinary care in providing his servant a safe place in which to work.  This statement of the rule has found frequent expression in many decisions of this court.  In *Atlanta & Charlotte Air-Line Ry.* v. *Ray,* 70 *Ga.* 674 (2-a), it was said:  'The duty rested on the company to properly select and superintend its operatives, its machinery, appliances, and appointments of every sort used in its business.  It was a guarantor that all reasonable and proper care had been exercised in the performance of those duties, and its liabilities should be limited to a failure to meet its obligations in this respect.'    It would seem that if a master

had used ordinary care to make the place of work safe, he would in every case be relieved from liability. There is in fact but little substantial difference between providing a reasonably safe place to work and using reasonable diligence to make such a place safe. The rule laid down in *Middle Georgia & Atlantic R. Co.* v. *Barnett*, 104 *Ga.* 582 (30 S. E. 771), *Chenall* v. *Palmer Brick Co.*, 117 *Ga.* 108 (43 S. E. 443), and *Norris* v. *American Railway Express Co.*, 156 *Ga.* 150 (118 S. E. 686), is, in our opinion, correct. In some cases the rule has been stated by this court to be that it was the duty of the master to furnish a 'reasonably safe place.' Such is the ruling in *Jackson* v. *Merchants & Miners Transportation Co.*, 118 *Ga.* 651 (45 S. E. 254). In *Atlantic & Birmingham R. Co.* v. *Reynolds*, 117 *Ga.* 47 (43 S. E. 456), it was said that the master is held to only ordinary care in furnishing his servant 'a reasonably safe place to work.' In *Betts* v. *Hancock*, 139 *Ga.* 198 (77 S. E. 77), it was said that it was inaccurate for the court to instruct the jury that 'it was the duty of the defendant in this case to have used in the transaction under investigation ordinary care and diligence, as I have defined it to you, in furnishing the plaintiff a safe place to work,' but a new trial was not granted because of this instruction. The verbiage used by this court in passing upon this question has not always been precisely the same, but the lack of harmony has been more apparent than real. The oldest ruling by this court precisely in point is that in the case of *Middle Georgia & Atlantic R. Co.* v. *Barnett*, supra, a full bench unanimous decision, and should be adhered to. It followed in principle the case of *Atlanta & Charlotte Ry.* v. *Ray*, supra.

"Whether or not the master is liable in any given case depends upon whether or not he has been derelict in the duty imposed upon him by law, to wit, the exercise of ordinary diligence. If he has been faithful to that duty, no liability can attach to him for any injury that may result. If he has failed in that duty, liability will attach. In order to determine whether he has been faithful or derelict, we must look to the standard of duty prescribed by law. In such a case as this the well-established rule in this State is that the master must exercise ordinary care, that is, such care as every prudent man would exercise under the same circumstances. What every prudent man would do under the circumstances would vary according to the time, place, and conditions. 'The standard

of ordinary and reasonable care is invariable, such care being that of every prudent man. Code [1882], § 2061. But the care of a prudent man varies according to circumstances dependent upon the degree of danger. . . "What is the precise legal intent of the term 'ordinary care' must, in the nature of things, depend upon the circumstances of each individual case. It is a relative and not an absolute term." ' *Central Railroad Co.* v. *Ryles,* 84 *Ga.* 430 (11 S. E. 499) ; 1 Hopkins' Personal Injuries (2d ed.), §§ 2, 87. The fixed standard of the law that the master shall furnish a safe place for the servant to work does not impose an absolute duty to furnish a safe place, but the duty is placed upon the master to make an effort to do so. As stated in 3 LaBatt on Master and Servant, 2410, § 907, 'As the master is deemed to be culpable if he fails to exercise that degree of care which is denoted by one or other of the expressions used to describe the hypothetical conduct of a man of ordinary prudence, so, on the other hand, he is not required to satisfy any higher standard of diligence or skill than that which such a man may be supposed to exercise under the circumstances. *Any instruction is correct which embodies this principle.* [Italics ours.] On the other hand, it is a misdirection to charge the jury in language the effect of which is to subject the master to more extensive obligations than those indicated by the phrase "ordinary care" or its equivalents.' From the annotations on the subject in the work just quoted it is seen that the expressions are widely variant. Summing the whole subject up Mr. LaBatt has shown, in the quotation above in the sentence which we have italicized, that the real test is whether or not the master exercised ordinary care, that is, whether or not he has fulfilled the duty imposed upon him by law. See also LaBatt on Master and Servant, §§ 906, 907, 919, 920. Such is the rule adopted by this court in *Middle Georgia & Atlantic Ry. Co.* v. *Barnett,* supra, as follows : 'It is well settled that a master is generally under a duty of providing his employee with a safe place in which to work. . . The duty of the master to furnish a safe place for the servant to work is not absolute and unqualified. Some kinds of work are necessarily attended with dangers against which the master can not by any degree of diligence provide. In such case the law does not require of him impossibilities ; but if, by exercising ordinary care, he can make safe the place wherein the servant is to labor, it is the master's duty to do so.' "

Justices Atkinson, Hill, and Hines had contrary views, and in their opinion it was error to charge that it was the master's duty to furnish "a safe place" in which to work, and "the third question should be answered in the negative." 159 *Ga.* 56.

We agree with the views entertained by Russell, C. J., and Justices Beck and Gilbert, especially so when applied to the excerpts complained of in this case. It will be noted that the judge was stating the *contention* of the plaintiff in his suit. When the charge of the court is read in its entirety it will be found that the court charged the jury that "This case being based upon the alleged negligence of the defendant, it becomes necessary for you to understand what the law means by negligence; and negligence means simply the absence of or the failure to exercise the degree of care required by law to be exercised. In other words, negligence is the absence of or the failure to exercise legally required care." The court then charged the jury that "in this case the law requires the defendant to exercise ordinary care; and the definition of ordinary care is just that care which every prudent person would exercise under the same or similar circumstances; and, with this definition, it becomes a question of fact for you to determine whether the defendant exercised ordinary care in so far as the particulars charged are concerned, or whether the defendant was guilty of negligence in so far as the particulars charged are concerned, or in any of them." The charge of the court as a whole did not put a greater burden upon the defendant than the law placed upon it in the matter of furnishing a safe place to work. The question of negligence and the necessity that the proof must satisfy the jury of its existence was fully and most fairly submitted to the jury.

When the charge is read in its entirety, neither the refusal of the written requests to charge, nor any of the excerpts from the charge complained of, shows error harmful to the defendant. The assignments of error upon the rulings on the admissibility of evidence are without merit. The evidence amply authorized the verdict. The entire charge of the court was adjusted to the issues raised by the pleadings and shown by the evidence. Under all of the record in the case, the court having approved the verdict, the motion for a new trial was properly overruled.

*Judgment affirmed. Broyles, C. J., and Bell, J., concur.*