THE MAYOR, ETC., OF SAVANNAH *vs.* SPEARS.

1. While the mayor and aldermen of Savannah are only bound to ordinary diligence in regard to preventing injury from a canal forming a part of its system of sewers, yet that diligence must extend not merely to keeping up such banks as a drain may have, but to the keeping it open and in such order as to protect the proprietors of adjacent lands, regard being had to the changes which are usual and ordinary at different seasons.

2. In the location of sewers and drains, and perhaps also in determining their dimensions, municipal authorities exercise a judicial or legislative discretion; but after the dimensions have been agreed upon or determined, they are liable in damages for negligence in constructing such sewers or drains, or for failure to keep them in good condition.

Municipal corporation. Damages. Negligence. Before Judge FLEMING. Chatham Superior Court. March Term, 1880.

Reported in the decision.

H. C. CUNNINGHAM, for plaintiffs in error.

R. R. RICHARDS, for defendant.

SPEER, Justice.

William Spears brought his action for damages against the Mayor and Council of the City of Savannah, in which he alleged that certain lands of his that he had in cultivation, with growing crops thereon, in the fall of 1878, were overflowed and inundated to the depth of several feet, by the escape of water from the Bilbo canal, a public canal of said city used for drainage purposes; that his crop, of the value of one thousand dollars, had been ruined and destroyed by said overflow and was utterly lost to him. He alleged that said canal had been established, taken and used by said mayor and council as part of their system of drainage in and around said city for the purpose of carrying off into the Savannah river the sewerage and rainfall of said city, and that they were bound by law to keep said canal and the dams thereof in good and sufficient repair, strength and height, free from overflow, so as to protect the lands adjacent to the canal, and which it is alleged they failed to do, whereby the damage resulted, etc.

To this action defendants pleaded the general issue, and under the evidence submitted and charge of the court, the jury returned a verdict for plaintiff for one thousand dollars damages. The defendant below made a motion for a new trial on the following grounds:

(1.) Because the judge erred in his charge, in that while he charged, as requested by the defendant in writing, as

follows: "If you find that the Bilbo canal was a reasonable and proper structure for the purpose for which it was intended, and that reasonable care was taken in its maintenance by the city, and nothing was done negligently or carelessly to cause damage to the plaintiff, and no damage occurred except in an extraordinary fall of rains, or freshet, then the plaintiff is not entitled to recover"—which request the court modified as follows: "Now there is no particular objection to this charge in some of its particulars, but I think it proper •to add, if you find storm and rain and freshet don't ordinarily occur in the fall of the year." "My idea is this (referring to another part of the request about a prudent man taking care of his own property): my idea is that a prudent man taking care of his own property will have reference not only to what occurs from day to day and week to week, but continue that ordinary care at certain seasons of the year, and if high tide and storm ordinarily occur at the time this happened, it is one of the things against which the party ought to provide."

(2.) Because the judge erred in his charge to the jury, in that while he charged, as requested by the defendant in writing, as follows: "The only care in maintaining the banks of the canal that it was the duty of the city to take, was such care as every prudent man takes of his own property of a similar nature. In other words, the city was only chargeable with ordinary diligence in taking care of and using said canal, and if you find that said city did exercise ordinary diligence in taking care of and using said canal, then the plaintiff cannot recover;" the court modified said request by adding: "If in addition to that, you find that the dams were sufficient." "It is not that they took proper care of the dams they had, but did they have a sufficient dam? If they did, and took sufficient care of it, they would not be responsible for acts of Providence. But whether storm in the fall of the year is an act of God, which does harm

to no one (as the law says), although it would be extraordinary in reference to other seasons of the year, that it would be ordinary in reference to the particular season when it happened, is a question for you to determine."

Other grounds that the verdict was contrary to evidence, unsupported by evidence, decidedly and strongly against the weight of evidence, and that the damages were excessive, were also set forth in said motion as grounds of new trial. The court refused said motion, and defendant excepted.

By an act of the general assembly of this state, assented to 13th December, 1858 (page 129), the mayor and aldermen of the city of Savannah were authorized to institute a system of drainage for said city on certain conditions therein named. The act provides that the mayor and aldermen are empowered and authorized to institute a system of drainage through any of the lands adjacent to said city and hamlets thereof into the Savannah river—provided they shall pay such damages as may be assessed for land taken or right of way obstructed, in the manner therein pointed out." " And provided also, that when the said mayor and aldermen shall take and use any private canal or portion of canal as a part of such system, the said city *shall be compelled to keep the same opened and in such order as to protect the proprietors of adjacent lands.*" It appears from the evidence in the record that this canal from which it is alleged the overflow escaped and destroyed plaintiff's crops, formed a part of the system of drainage of the city of Savannah, and was taken charge of and used and exclusively controlled by the city authorities to empty said drainage and rainfall into the Savannah river. It being so taken and used, the law that authorized the city authorities to take and use this canal as a part of the system of drainage, also imposed as a condition that said city "should keep the same opened and in such order as to protect the proprietors of adjacent lands."

This statute of 1858 conferred the unusual authority upon the mayor and aldermen of taking private property, both on land and water, *outside* of the city limits, upon fair compensation, for the purpose of establishing a system of drainage, so important to the health and prosperity of said city. But while it conferred this authority, it likewise distinctly imposed as a condition of this grant, a duty on the mayor and aldermen to keep such canal, so taken and used, open and in such order as to protect the proprietors of adjacent lands.

. It is insisted on the part of the counsel for the city, that the taking and using of this canal was a *judicial act,* and that the city was not liable for this cause for any error of judgment. While it may be true, under the grant conferred by the act of 1858, the city could exercise its (judicial or legislative) discretion in the taking and using any private canal or portion of such for said system, yet the grant (if made use of) was coupled with a condition that made it the imperative duty of the city to *protect adjacent landholders from damage against the use of such water ways,* and we can but determine that under this condition of the grant, it was the legal duty of the city in the enlarging and preparing of such canal to raise its banks to such a height and to make them of such strength as to prevent the escape of its water on the adjacent lands, and failing to do so the corporation would be liable for damages.

There seems to be in the books and authorities a distinction of this kind : In the location of sewers and drains, and *perhaps* in determining their dimensions, municipal authorities exercise a judicial or legislative discretion, and are no more liable for such injury as happens, without negligence, to adjacent land owners, in consequence of the location and dimensions of said drains, than they are for the injuries resulting from fixing the grade of streets. Such injuries may be "*damnum absque injuria.*" But after the dimensions have been agreed

upon or determined, they are liable in damages for negligence in *constructing* the sewers or drains, and they must be kept in order just like streets—must be kept in good condition, and the liability for the consequences of non-repair is the same as in case of a street. See *Fuller vs. City of Atlanta*, decided December 28th, 1880; *Rivers vs. City of Augusta*, decided 23d November, 1880; *Brown vs. City of Atlanta*, decided 8th January, 1881; 4 Waits' Actions and Defenses, p. 641; 59 *Ga.*, 544; 55 *Ib.*, 17; 53 *Ib.*, 607–8; 58 *Ib.*, 238; 47 *Ib.*, 268–9; 49 *Ib.*, 316.

Under our view of the law as applicable to the facts of this case, we find, therefore, no error in the modifications made by the court in the written requests to charge asked for by counsel for defendant below.

As to whether this overflow of the lands of the plaintiff below was from an inundation from the river or from this canal was a question of fact, upon which there was some conflict of testimony, and was a question for the jury. When we review the whole case in connection with the able and exhaustive charge given by the venerable and distinguished judge who presided, we find no error of law or abuse of discretion on his part in refusing this motion for a new trial on any of the grounds therein taken.

Let the judgment of the court below be affirmed.