## M. A. MARKLE v. BOR. OF BERWICK.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF COLUMBIA COUNTY.

Argued April 14, 1891—Decided April 27, 1891.

(a) In an action against a borough to recover for injuries to property, caused by an overflow of surface water into the plaintiff's cellar, there was evidence tending to show that a sewer, to take away the water, was not only imperfectly constructed originally, but negligently allowed to become clogged and out of repair:

1. In such case, it was not error to refuse to instruct for the defendant that "if the jury believe that the sewer was of sufficient capacity to carry off the usual fall of water, . . . . then the defendant performed its duty of construction, and the plaintiff is not entitled to recover;" for

Charge of Court below.

if the sewer was stopped up, or out of repair, its capacity was immaterial.

2. An assignment specifying error in the admission of an offer of evidence against the objection of the appellant, but not showing the full substance of the testimony admitted under the offer objected to, is not in conformity with the Rules of the Supreme Court, [Rule XXIV.,] and will not be considered.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and WILLIAMS, JJ.

No. 209 July Term 1890, Sup. Ct.; court below, No. 48 December Term 1886, C. P.

On October 22, 1886, M. A. Markle brought case for negligence against the borough of Berwick. Issue.

At the trial on May 12, 1890, it was made to appear that the town of Berwick was incorporated as a borough by the act of January 29, 1818, P. L. 32, and in due course was brought within the provisions of the general borough law of April 3, 1851, P. L. 320. In 1882, the council adopted an ordinance for the regulation of the streets and sidewalks, and subsequently, by the employment of a competent engineer, established a system of grades and levels defined and marked in an official grade-book adopted. In the same year, after the promulgation of the ordinance and the establishment of the system of grades and levels, a street in front of plaintiff's lot, whereon he had put up a dwelling in 1881, was graded and paved. In September, 1886, there was an overflow of surface water into the plaintiff's cellar, occupied by him as a saloon, by reason, as was alleged, of the negligent construction and maintenance of a drain for the surface water, from the gutter in front of plaintiff's lot, through a "sump" to the sewer beneath.

At the close of the testimony, the court, IKELER, P. J., charged the jury in part as follows:

It seems from the testimony in the case that after this sewer was constructed it became choked up. The sewerage of the borough was constructed with a sump or with seven sumps, as they are called—openings to the sewer from the gutter on the top. The sump opens from the gutter, carrying the water along the surface and down into an underground pipe. It has

Charge of Court below.

been testified to here, and not disputed, that the opening to that sump near where this accident occurred was eighteen inches by twenty, or about that size, where the water passes under a covering of stone above the open gutter on the street, and drops directly down into the pipe. The openings on the sides of the sump—on either side of the stone covering, as I understand the testimony—are eight inches high from the gutter, and about three feet wide or between two and three feet wide. There has been some testimony, and it is alleged here on the part of the plaintiff, that because these openings were not grated or screened,—that is, were not covered by an iron grate or screen,—therefore that was carelessness or negligence on the part of the borough authorities. There has been, to our knowledge, no evidence, nor any law, that we have so understood, quoted to show that the fact of not putting up grates to the interstices or openings to this sump is of itself negligence. It is a question of fact for you, gentlemen, under all the circumstances of the case, bringing to this case such knowledge as you have of such existing circumstances; and, under the evidence in this case, it will be for you to decide whether that was negligence, or whether a grating or screen placed at that opening, or at those openings, would not choke it up more readily than to leave it entirely open as it was. It seems to us that that is a question to be submitted to you, under all the evidence in the case.

It seems, however, to be an undisputed fact in the case that this sump became choked up and filled between the year 1883 and September 28, 1886, so that the surface water did overflow on the street, could not pass freely through that sump, and on more than one occasion flooded, to some extent, the basement of the house of the plaintiff. It is also alleged here, on the part of the defendant borough, that if that sewer was sufficient to carry and take all the water, the surface water, from the street, in ordinary and usual showers and storms, and if this storm of the 28th of September, 1886, the one especially complained of and which brought the parties to this litigation or induced the plaintiff to bring suit, was an extraordinary and unusual storm, then the defendant is not liable; while the allegation on the part of the plaintiff is that the borough is liable, if the sump and sewer were not of sufficient capacity at that time to carry away the surface water.

### Charge of Court below.

Mr. Scarlet: That is not an issue in the case, by the pleadings.

By the court: We think it is, that that is a question which arises under the pleadings and under the evidence in the cause. If that be a fact, if it be proved to the satisfaction of the jury, that this was an unusual, unexpected, unforeseen storm, then the borough would not be liable.

The plaintiff was occupying and living in this house, occupying part of it as a dwelling and keeping a saloon in the basement; he was engaged in business during the year, 1886, when this special damage is complained of. In order to recover, it becomes necessary, on the part of the plaintiff, to show how the use of his property was injured; and, in doing that, or in endeavoring to do that, he has called before you a number of witnesses. . . . .

[Whether this was an extraordinary storm, or storms, on the 19th and the 28th of September, 1886, will be a question for you under the evidence. . . . . We will instruct you as to what the definition of that kind of storm is; but, before we do that, we desire to call your attention to some of the testimony, as we recollect it, in reference to that. . . . .

Usual storms are storms regarded as ordinary and well known to occur in the neighborhood occasionally, although the period of their recurrence may be at no regular interval; it would be a usual storm, under those circumstances, though it rarely occurred. An extraordinary storm would be one described as an unusual water-flood or storm of a character not to be foreseen, which persons of ordinary observing capacity would not anticipate or expect to occur; such are exceptional floods and storms. The borough, in constructing its sewer for the carrying away of the surface water, was in duty bound to take into consideration, not only the ordinary and usual quantity of water in ordinary times, but also the liability to storms occasionally occurring or likely to occur; and, if they did so provide, and if then an unusual and extraordinary storm, whereby the whole immediate country around was overflowed and flooded—and which by the exercise of ordinary prudence, could not be provided for or guarded against—occurred, and if damage accrued to the plaintiff by reason of such disastrous extraordinary storm, the borough would not be liable, the law only holding

Charge of Court below.

it liable for the exercise of ordinary care and prudence, for failure to exercise ordinary care and prudence.] [7] . . . .

The principal allegations of the complaint, put in issue by the evidence, are: First, that the borough allowed its sewer to be stopped up or out of repair. Second, that it had notice of the defect both personally and by long existence of the same. And, third, that the injury accrued to the property of the plaintiff without any fault or neglect on his part.

The corporate authorities are vested with power to grade their streets and may lower or elevate them at will, provided they exercise reasonable care and skill in the performance of the work; and if, in fixing the grades and constructing their sewers, they do the work in good faith, they will not be liable for the mistakes of competent engineers or other persons who supervise or have knowledge of the work. . . . . If the corporate authorities do build drains or sewers for corporate purposes, they are bound to construct them properly, and to exercise reasonable care and oversight over them, to keep them unobstructed and in good condition, so that adjoining property owners shall not be unnecessarily injured thereby. . . . . If the sewer was properly constructed, and became choked or stopped up, it was the duty of the borough authorities to open it, provided they knew of it or had had notice of the fact for a sufficient length of time before the happening of the injury, to enable them by the exercise of reasonable diligence to make the necessary repairs. To bring home notice to the corporate authorities, or to the municipality, of a defect in a sewer, it is not sufficient to report the defect to a member of the borough council. Notice must have been given to the street commissioner or other person having supervision of the sewers, or to the president and the secretary of the town council; or else, to charge the municipality with constructive notice, it must be shown that a sufficient length of time had elapsed between the time of the stopping up of the sewer and the time of the occurrence of the injury, to enable the borough authorities by the exercise of reasonable diligence to have discovered the defect and repaired it. The fact of repairing the sewer subsequently to the injury or stoppage or overflow, is not evidence of previous notice. . . .

And this question, whether the borough authorities had notice, or were negligently ignorant, is a question for you under

Charge of Court below.

all the evidence in the case.   Such notice may be inferred by you, if the defect in the sewer had existed for a considerable length of time or for so long a time as to render it notorious, or, if it was of frequent occurrence and had thus become generally known.

In constructing the sewer, the defendant was only required to use reasonable care ; such care as a prudent man would use under like circumstances in reference to his own property.   If you, therefore, find that the work was performed by an engineer or by other persons competent to take charge of such work, and that the size and shape of the sewer were left to him or to them, and that he or they honestly believed, when making the plans and constructing the sewer, that it was large enough and sufficient to conduct all the surface water from the street, then, even if he or they,—it is not directly shown who constructed this sewer, but that it was constructed by the corporate authorities is not denied,—were mistaken, the defendant is not responsible for such honest mistake, and for that alone the plaintiff cannot recover.   If the town authorities exercised the best judgment they had upon the subject ; knowing the situation, being familiar with the locality and with the usual variety of storms and amount of rainfall that were likely to come in the ordinary course and character of the weather,—if they exercised the best judgment they had under the circumstances, then the borough would not be liable, even if the sewer proved insufficient at first to carry off the surface water ; but if, after having knowledge that the sump and sewer were insufficient or were stopped up, they neglected or refused to repair it or to put it in proper condition to carry off the surface water, as to that we have already instructed you.   In keeping the sewer in repair the borough is only required to exercise reasonable and ordinary care ; and, unless you find from the evidence that the defendant failed to exercise ordinary care and prudence in opening the sewer at the place of the alleged stoppage and injury, then you should find for the defendant.

We are asked by the counsel for the defendant to instruct you as follows :

1. That compensation for the loss is the measure of damages : and the damage is the amount of permanent injury to the building ; and if the jury believe that the building can be

Charge of Court below.

perfectly repaired and restored for $180, then, that is all the plaintiff is entitled to recover, if the jury should be of opinion that the plaintiff is entitled to recover anything.

Answer : We refuse this point, and have already instructed you as to the question of damages. It is refused, because it does not contain all the items of loss.[8]

2. That, if the jury believe that the sewer was of sufficient capacity to carry off the usual fall of water, as testified by the plaintiff and others his witnesses, then the defendant performed its duty of construction, and the plaintiff is not entitled to recover.

Answer : This point is refused; because, while they may have performed the duty of construction, they may have failed to perform the duty of repair or some other duty.[9]

3. That, if the jury believe that it was the practice of Creasy, the street commissioner, to examine the sumps after every shower, as testified to by him on the part of the plaintiff, then the defendant has not been negligent in attention to the sumps, and the plaintiff is not entitled to recover.

Answer : This point is refused; because it may have been the duty of Creasy to examine the sumps, and he may have done so, and yet have failed to make the necessary and required repairs.[10]

4. That, if the jury believe that the storms of the 19th and the 28th of September, 1886, were unusual and extraordinary in violence and volume, then it is one of " those unexpected visitations whose comings are not foreshadowed by the usual course of nature, and must be laid to the account of Providence whose dealings, though they may afflict, wrong no one," and the defendant is not liable in damages.

Answer : This point is affirmed, with our instructions as to what an extraordinary storm is, and as to the fact whether or not this plaintiff's property was injured by other storms than those of the 19th and the 28th of September, 1886, during the six years previous to the bringing of this suit, for which the plaintiff might recover, if you find that the evidence in the case warrants it.[11]

—The jury returned a verdict for the plaintiff for $590. Judgment being entered, the defendant took this appeal, specifying that the court erred :

### Opinion of the Court.

1. "In admitting evidence offered by the plaintiff and objected to by the defendant, as per defendant's first bill of exceptions: Appendix, 51, 55." *

2–6. [These assignments were of like form with No. 1, preceding: see foot-note.]

7. The portion of the charge embraced in [ ] [7]

8–11. The answers to the defendant's points.[8 to 11]

*Mr. John G. Freeze* (with him *Mr. Charles B. Jackson* and *Mr. S. B. Hanly*), for the appellant.

Counsel cited: Hays v. Paul, 51 Pa. 134; Swank v. Phillips, 113 Pa. 482; Citizens Ry. Co. v. Ketcham, 122 Pa. 228; Pittsb. etc. Ry. Co. v. Gilleland, 56 Pa. 445; Collins v. Philadelphia, 93 Pa. 272; Smith v. Mayor, 66 N. Y. 295 (23 Am. Rep. 53).

*Mr. James Scarlet* (with him *Mr. Charles C. Evans*), for the appellee.

Counsel cited: Elkins v. McKean, 79 Pa. 493; Ott v. Oyer, 106 Pa. 6; Vanderslice v. Philadelphia, 103 Pa. 102; Mayor of N. Y. v. Baily, 2 Den. 183; Lloyd v. Carter, 17 Pa. 216; Greber v. Kleckner, 2 Pa. 289.

PER CURIAM:

The assignments of error from 1 to 6, inclusive, do not conform to the Rules of Court, and for this reason will not be considered.

The remaining assignments allege error in the charge of the court, and in the answers to points. While the case is close, upon its facts, we are unable to see error in the instructions of the learned judge upon the law. Much stress was laid upon the refusal of the defendant's second point. It was urged that it should have been affirmed without qualification. We think the point was properly refused. If the sewer was large enough to carry off the usual flow of water, yet if it was stopped up or out of repair, the capacity of the sewer was immaterial; and

---

* Following the reference to the appendix, at the end of each assignment, was the question asked of the witness, the objection of the defendant, the ruling of the court admitting the offer and giving an exception; but in no instance was the testimony admitted under the offer, or the substance thereof, stated.

Statement of Facts.

we think there was evidence to justify the remark of the court in regard to it.

It is possible the jury may have made a mistake, but we do not find anything to convict the court of error.

Judgment affirmed.