## STEWART *v.* SAVANNAH ELECTRIC COMPANY.

1. In a suit for a personal injury by a servant against the master, where the right of recovery is dependent upon the negligence of the master in failing to inspect the premises, and where the duty of inspection was upon the injured servant, the servant can not recover for an injury sustained because of his failure to inspect.
2. It is no ground to reverse a judgment of nonsuit that the court excluded evidence which, even if admissible, would not have materially changed the scope and effect of the evidence which was admitted.

Argued January 11,—Decided June 29, 1909.

Action for damages. Before Judge Cann. Chatham superior court. December 21, 1907.

*Oliver & Oliver,* for plaintiff, cited, on duty to furnish safe place: Civil Code, §2611; 118 *Ga.* 87; 121 *Ga.* 791; 127 *Ga.* 610; 1 *Ga. App.* 403; 2 *Ga. App.* 308. Exclusion of testimony: Civil Code, §5176; 77 *Ga.* 202; 92 *Ga.* 730. Negligence of fellow servant: Civil Code, §§2297, 2323; 117 *Ga.* 414. Presumption on proof of injury: Civil Code, §2321; 122 *Ga.* 664; 124 *Ga.* 679; 126 *Ga.* 710; 1 *Ga. App.* 88. Zealous performance of duty: 79 *Ga.* 495; 91 *Ga.* 676; 1 *Ga. App.* 403. Nonsuit: Civil Code, §5437; 64 *Ga.* 307; 77 *Ga.* 407; 80 *Ga.* 807; 100 *Ga.* 133; 102 *Ga.* 461; 103 *Ga.* 288; 118 *Ga.* 86.; 125 *Ga.* 406; 126 *Ga.* 656, 657; 127 *Ga.* 611.

*Osborne & Lawrence,* for defendant, cited 121 *Ga.* 651; 124 *Ga.* 899; 1 *Ga. App.* 807; 115 *Ga.* 624; 37 N. E. 368; 1 Lab. M. & S. 1126.

Evans, P. J. Stewart filed his suit against the Savannah Electric Company to recover damages for personal injuries which he alleged that he sustained through the defendant's negligence. He alleged, that on October 22, 1905, he was an employee of the company, and engaged in night work in and about the power-house, his special duty being to take charge of the house and engines, and read the meters every hour. There are two floors to this house, one elevated about four feet above the other. Upon the upper floor are the large dynamo generator and engine, and on the lower a smaller engine and generator. The floors are connected by a flight of five steps, each of which is made of solid massive plank about forty feet long, and one and a half inches thick. At a point four or five feet from the western wall of the

building the third step has been so sawed with bevel edges that it can be lifted out of place so as to leave an opening to go under the steps to reach the cellar below. When the engine on the upper floor is running, these steps are lighted by a pilot light; but upon the night in question the engine on the upper floor was not running, and there was no light upon that portion of the step which had been converted into a trap-door. While petitioner was on the upper floor at eleven o'clock, reading the meter, he heard the main circuit breaker on the lower floor drop, the effect of which was to cut off the power from the whole car system; and knowing this was a condition requiring immediate attention, he started to the lower floor down the steps, and fell through the opening in the third step, the plank of which had been carelessly and negligently removed and not replaced, receiving serious injuries, which are fully described. He alleges, that he was in the performance of his duty, and in the exercise of all reasonable and proper care; that his injury was due entirely to the negligence of defendant's servants in thus negligently leaving this opening, he having relied, as he had a right to do, upon the supposition that the premises were in proper condition; and that he could not have discovered the defect even if he had passed the place previously to his injury, on account of the darkness, and that he did not have equal means of knowing this condition with defendant.

The plaintiff testified, that on the night of the injury he was employed at the Bolton street plant of the defendant as night engineer. His duties were to look after the engines, boiler-room, and everything in general around the plant. Besides himself there were employed around this plant the oiler, fireman and coal man, who were down below. The large engine on the upper floor was not running, and had not been for several days, as the generator had burned out. The two smaller engines on the lower floor were running. Between the upper and lower floor were a series of four or five steps about twenty feet long, in one of which was an opening to allow passage below the steps, this opening being cut from the step in such a way that the piece cut out fit down over it, being mitered, so as to close it when down in position. He had to go to the upper floor every hour to take the readings of the meter, and the only way to go from one floor to the other is by these steps, which were perfectly safe while the plank was in position. This

plank was never taken up except when it was necessary to go underneath, and after one came up he was supposed to place it back in its place, so that it would be safe, and to keep any one from falling through it. "That was the invariable rule." On the night in question, while on the upper platform reading the meter at about eleven o'clock, he heard a sound indicating that the circuit breaker had fallen out, and it was necessary for him to go over this place to see about the matter. He didn't notice the hole was there, and didn't know it was open, and no one could have seen it "unless they had gone there and looked very closely." When the large machine was running there was a pilot light which would clearly show this hole; but as it was not running, this light was not shining. "If you had looked very close you could have seen it, but by walking by there ordinarily you would not have noticed it." There had been no one working there that night after he came on duty; if there had been, that would have been notice to look out for that place. The day engineer went off at seven o'clock in the evening. As day engineer his duties were the same as those of plaintiff at night. Each reported to the other, when he came on, the condition of the plant. Mr. Keck and Mr. Yawger were superior in authority to plaintiff and the day engineer. They were not stationed at the engine-house. One or the other of these came there nearly every day. On cross-examination plaintiff testified: "The engineer was in charge of the plant;— that means charge of the engines, the generators, machinery, and premises generally. I was in charge of and over the oiler, . . and also had charge of the other employees at the plant, at the time the injury occurred. I looked after the premises generally —saw that everything was in order and everything in good shape; and the company held me responsible for the condition of the premises generally." There had been no occasion until this time that night for him or the oiler to go down that way. Both the plaintiff and a physician testified as to the extent of his injuries. The court awarded a nonsuit, and the plaintiff excepted. He also assigned error upon the refusal of the court to permit him to testify that "The day man, as he left, told me that everything was all right around there," over objection of defendant that it was hearsay and irrelevant.

1. There was no error in granting a nonsuit. According to the plaintiff's testimony, he was a vice-principal of the defendant, when he was in charge of the power plant, charged with the duty of inspection that he might see that everything (both machinery and premises) were kept and maintained in good order. The defendant's negligence is alleged to have consisted in removing that portion of the plank which covered the opening in the third step, and neglecting to replace it in its accustomed and proper place. The testimony does not reveal the identity of the person who removed the plank, nor under what circumstances it was taken out of place. It is inferable, from what the plaintiff said in his testimony, that the plank was removed before he came on duty, but how long before that time we have no information. In order for the plaintiff to establish a right of recovery he was bound to prove either that the defendant's servants removed the plank, or knew that it had been removed and not replaced, or that the hole in the steps had remained uncovered for such length of time as to impute notice of its condition. It was not shown that any servant or representative of the defendant knew that the plank had been removed. The plaintiff's right of action, therefore, must rest upon a liability consequent upon the defendant's imputed knowledge of the uncovered hole in the step, resultant from a failure to inspect within a reasonable time. Keeping without the realm of speculation we can assume only that sometime prior to the time the plaintiff entered upon his duties, the covering to the hole in the step was removed, and that its condition was not discovered until the plaintiff fell into it some four hours later. During this time the duty of inspection was on the plaintiff, and any negligence of the defendant growing out of a failure to inspect was the plaintiff's negligence. The defendant employed the plaintiff to safeguard the premises; and if the defendant has been remiss in seeing that the premises were kept in a safe condition, it was because of the plaintiff's dereliction in duty.

2. Would the aspect of the case have been changed if the court had not excluded the statement of the day engineer to the plaintiff as the latter began his service on the night of the injury? That statement was, "The day man, as he left, told me that everything was all right around there." The plaintiff testified that he always reported to the day engineer in the morning the condition

of everything, and that the day engineer similarly reported to him at night. It does not clearly appear that these reports were made in the scope of their duties; and if such reports were but the voluntary acts of the engineers, the evidence was properly withheld. But assuming that an inference of a duty to report may be deduced from the statement that a report was always made when a shift occurred, this testimony would not have materially altered the case. The statement of the day engineer was very general in terms, and more properly interpretative that there was nothing wrong in the general condition of the premises and machinery, than of furnishing hypothetical inferences that the avenue of approach to the cellar had not been left uncovered, or an oil-can had been placed on a shelf rather than in its usual place, or the like. Both engineers knew that the plaintiff's work was near the step; that he would pass in close proximity at least once every hour when he recorded the meter reading; that he knew the step was constructed for use by the removal of the mitered board whenever occasion required it. It would be putting a forced construction on the words of the day engineer to hold that he gave assurance to the plaintiff that the covering of the hole in the step was in place. The day engineer's report could in no event count for more than an assurance that there was nothing unusual or wrong in the general condition of affairs at the plant. If we construe the language of the day engineer as an assurance of the master that the premises were in a safe condition, the plaintiff could not recover. As already pointed out, there was nothing in the plaintiff's testimony to show the master had actual knowledge of the opening in the step. The plaintiff being under obligation to inspect while he was on duty, his right of recovery is dependent upon the master's having knowledge or notice of the condition of the step, and there was no proof that the master had actual knowledge, or that the hole in the step had been left uncovered for such a length of time as that knowledge could be imputed to the master before the plaintiff went on duty. We do not find it necessary, therefore, to go into the question as to whether the relation of the two deputy masters was that of fellow servants. The evidence which was excluded would not, if admitted, have saved the case from nonsuit.    *Judgment affirmed. All the Justices concur.*