Wade, C. J.
(After stating the foregoing facts.) We do not consider it necessary to refer to any of the special demurrers, as in our opinion none of them point out any such substantial defects as, required correction by amendment. It is enough to say that if the petition be good as against the general demurrer, it presents the plaintiff’s complaint with sufficient certainty and definiteness; for both the injury alleged and the negligence to which it is ascribed are so clearly indicated as to put the defendant on ample *343 notice and enable it to anticipate the precise line of attack which the plaintiff must pursue in order to recover therefor. 1. A clear distinction is now generally recognized between the responsibility of a municipal corporation when in the exercise of a governmental function on the one hand, and of a ministerial function on the other. The rule is uniform that a municipal corporation is not liable for alleged tortious injury to the person or property of individuals when engaged in the performance of public or governmental functions or duties; but, on the other hand, a recovery may be had against a municipal corporation where it negligently performs or negligently fails to perform duties in their nature ministerial. Our code concisely states the rule as follows: “Municipal corporations are not liable, for failure to perform, or for errors in performing, their legislative or judicial powers. For neglect to perform, or for improper or unskillful performance of their ministerial duties, they are liable.” Polit. Code, § 897. See Cornelisen v. Atlanta, 146 Ga. 416 (91 S. E. 415), construing this section. See also Mayor &c. of Dalton v. Wilson, 118 Ga. 100, 103 (44 S. E. 830, 98 Am. St. R. 101). The distinction between governmental and ministerial functions is well settled and the process of separation is generally practicable; but despite the plain difference between the two kinds of powers, they often approximate each other so closely as tó render the ascertainment of the exact line of distinction between them somewhat difficult, so that usually all that can be done with safety is to determine in each case as it arises under which class it falls. It is unnecessary to refer to the important exception to the general rule of exemption from liability for negligence in the performance of a public duty, which is usually recognized, and is recognized in this State, as to damages resulting from defects in streets and highways.
The first question, therefore, which presents itself for decision is whether or not the construction and maintenance of a sewer intended to drain surface-water from private property and from the streets of a municipality, as well as to remove sewerage from the property of private individuals within the city limits, is a governmental of ministerial act, where the city is acting (as alleged in the petition in this case) under charter authority and is itself building or constructing such sewer. The decisions are practically uniform in holding that the duties of municipal authorities in *344 adopting a general plan of drainage, and in determining when, where and of what size and at what level drains or sewers shall be built, are of a quasi-judicial nature, involving the exercise of deliberate judgment and wide discretion; and the municipality is not liable for an error of judgment on the part of the authorities in locating or planning such improvements. See 28 Gyc. 1313 (2). It is, however, equally well settled that after the adoption of a plan of sewerage or drainage by a city, the manner in which such plan is executed becomes, so far as the rights of the citizen may be affected, a mere ministerial duty, and for any negligence in the execution, construction or maintenance of the work, whereby injury is inflicted upon a private right, the municipality will be responsible. “The actual construction of the class of improvements under discussion [sewers and drains] is the exercise of a merely ministerial function; and if it is not performed with reasonable care and skill, any person who is injured by reason of such negligence may have an action.” 28 Cyc. 1315 (3). The distinction between the governmental act involved in the selection of a' plan and the ministerial act performed in the execution of that plan is clearly stated in the following quotation from 5 Thompson on Negligence, § 5794: “That a municipal corporation is not liable for errors of judgment in matters where its governing body or other officers act in the exercise of a legislative or judicial discretion, has given rise to a distinction, as to its liability, between the case of a defective plan and that of a defective execution of public work. If the plan of a public work is so defective that I am thereby damaged, I can' recover nothing, because the making of the plan was in the nature of a legislative or a judicial act; but if the work is defectively or negligently executed by the officers or agents of the municipal corporation who are charged with its execution, and I am thereby injured, then, according to this judicial casuistry, I can recover damages.” While municipalities are not liable for failing to adopt plans therefor or for failing to construct sewers (5 Thompson on Negligence, § 5871), “they are frequently held liable to pay damages to the owners of private property for injuries which proceed from the negligent or unshillful manner in which the ministerial work of making the sewer, drain, or the like has been executed, or for negligence in failing to heep it in repair, or allowing it to become obstructed, whereby unnecessary damage *345 is done to such property; in other words, where they have failed to exercise ordinary or reasonable care.” Id. 5873. This rule ha-s been repeatedly recognized by the Supremé Court of this Statb. It was said in Langley v. Augusta, 118 Ga. 590, 598 (45 S. E. 486, 98 Am. St. R. 133): “The officers in charge of the affairs of ,a municipal corporation may select places for the construction of a system of sewerage and drainage, and adopt a plan for such construction, without rendering the city liable in damages for injuries resulting from such selection and from the proper [italics ours] construction of the system. These officers may also, if it is necessary, take or damage property of private citizens in constructing the system of sewerage and drainage, but adequate compensation must be paid for property so taken or damaged. The same is true of the construction of any public improvement. City of Atlanta v. Green, 67 Ga. 386; Moore v. Atlanta, 70 Ga. 611; Boughton v. Atlanta, 113 Ga. 948 [39 S. E. 316]. If a municipal corporation negligently constructs a system of sewerage or drainage, or negligently maintains [italics ours] one properly constructed, so as to injure private citizens or their property, it will be liable in damages for the injury thus occasioned.” In Massengah v. Atlanta, 113 Ga. 966 (39 S. E. 578), the Supreme Court said: “Permitting a public city sewer to be or remain in such a defective condition as to become a nuisance, with resulting injury to realty, gives a cause of action against the municipality in favor of the owner of such realty, and on the trial thereof he may recover for all damages to his property which have occurred within four years of the filing of his petition.” The same rule is recognized in the following cases: “A municipal corporation is liable to a property owner for damage sustained by a negligent failure to keep its drains and sewers in repair.” Mayor &c. of Brunswick v. Tucker, 103 Ga. 333 (39 S. E. 701). “If such a nuisance owed its origin not to the general system of which this sewer was a part, but to a defective execution of the same at this particular place, there can be no doubt of the power to restrain the city from continuing the nuisance, notwithstanding the municipal government is by statute invested with plenary powers over streets, sewers, drainage and sanitation.” City of Atlanta v. Warnock, 91 Ga. 310, 314 (18 S. E. 135, 33 L. E. A. 301, 44 Am. St. E. 17). “It seems thus to be clear that'in grading or in constructing sewers skill and care *346 must be used, it being ministerial work, and if not used, the city w<as liable "prior to, and exclusive of, the constitutional provision now of force.” City of Atlanta v. Word, 78 Ga. 276, 286. The rule is concisely stated in Mayor &c. of Savannah v. Spears, 66 Ga. 304 (2), as follows: “In the location of sewers and drains, and perhaps also in determining their dimensions, municipal authorities exercise a judicial or legislative discretion; but after the dimensions have been agreed upon or determined, they are liable in damages for negligence in constructing such sewers or drains, or for failure to keep them in good condition.” See also Smith y. Atlanta, 75 Ga. 110, 112; Mayor &c. of Milledgeville v. Stembridge, 139 Ga. 692, 693 (78 S. E. 35); Perry v. Worcester, 6 Gray (Mass.), 544 (66 Am. D. 431, 436, and numerous cases cited in note); Chalkley v. Richmond, 88 Va. 402 (14 S. E. 339, 29 Am. St. R. 739, note); 61 L. R. A. 697, note; Georgetown v. Commonwealth, 115 Ky. 382 (73 S. W. 1011, 1 Ann. Cas. 961). After a sewer or drain has been constructed by a municipal corporation, when it assumes the control and management thereof it is bound to use reasonable diligence and care to keep the same in good repair, and is liable in damages for injuries resulting from its negligence in this respect. See Taylor v. Austin, 32 Minn. 247 (20 N. W. 157); Mayor &c. of Savannah v. Spears, supra; Mayor &c. of Savannah v. Cleary, 67 Ga. 153; Barton v. Syracuse, 36 N. Y. 54; Nims v. Troy, 59 N. Y. 500; Rowe v. Portsmouth, 56 N. H. 291 (22 Am. R. 464); Smith v. New York, 66 N. Y. 295 (23 Am. R. 53); Merrifield v. Worcester, 110 Mass. 216 (14 Am. R. 592); Hitchins v. Frostbury, 68 Md. 100 (11 Atl. 826 6 Am. St. R. 422); Bates v. Westborough, 151 Mass. 174 (23 N. E. 1070, 7 L. R. A. 156); Young v. City of Kansas, 27 Mo. App. 101; Markle v. Berwick, 142 Pa. St. 85 (21 Atl. 794); Fuchs v. St. Louis, 133 Mo. 168 (34 L. R. A. 118, 31 S. W. 115, 34 S. W. 508); Fitzgerald v. Ottawa, 22 Ont. App. 297; Frostburg v. Dufty, 70 Md. 47 (16 Atl. 642); Fleming v. Manchester, 44 L. T. N. S. 517, 45 J. P. 423; Burnett v. New York, 36 App. Div. 458 (55 N. Y. Supp. 893).
Numerous cases in our own reports, some of' which are above referred to, establish the right of an individual to recover from a municipality on account of defective or improper construction of drains or sewers, resulting in flooding' or otherwise injuring pri *347 vate property; and, of course, the same rule must apply where the injury is to the person. • It is broadly stated in 4 Dill. Mun. Cor. (5th ed.) 2903, that “if a- city neglects its ministerial duty to cause its sewers to be kept free from obstructions, to the injury of a person who has an interest in the performance of that duty, it is liable, as we shall see, to an action for the damages thereby occasioned.” This statement includes the proposition that if a city fails to properly maintain a sewer, and thereby one in the exercise of ordinary care suffers personal injuries, the city would be liable.
The construction of the new sewer, and the maintenance of the old sewer from alleged defects in which the injury in this case resulted, both coming within the scope of the ministerial duties of the municipality, there is therefore no merit in the ground of thé demurrer insisting that the construction and maintenance of sewers involve the exercise of purely governmental functions for which the city could not be held liable.
2. The petition alleged that the city under proper charter authority was proceeding to erect a new sewer without the intervention of a contractor, and that the husband of the plaintiff lost his life in consequence of defects in an old sewer previously constructed by the city, adjacent to the one on which he was at work, which defects had existed for a time sufficiently long to charge the city with notice, some evidences of which being in fact visible, coupled with further negligence on the part of the city in removing the surrounding earth which supported the old sewer and thus subjecting it to a strain which, on account of its defective construction, it was unable to withstand. On the general, proposition, the following quotation from 4 Thompson on Negligence, § 3916, is both pertinent and comprehensive: “The construction by a city of a sewer is a ministerial work, and it will be liable for an injury to one employed by it in such construction, caused by the careless or unskillful manner of performing the work. A city can not escape liability for injuries to one. of its employees engaged in constructing a sewer, caused by the unskillful manner of performing the work, on the ground that, the city itself, through its superintendent of streets, constructed the sewer, instead of letting out the contract to the lowest bidder as required by its charter; since, as it was given power to establish and regulate sewers, it was acting within the general .'scope of its power in constructing the sewer, and *348 was doing an act lawful in its nature, although done in an unlawful manner.” A municipality engaged in constructing a sewer is bound to the same rule of diligence in providing a safe place for its employees to work which applies to a private or independent contractor engaged in similar work. “A municipal corporation may be held liable for negligence at the suit of an employee; and when acting in its quasi-private or ministerial capacity, it owes its employees the same measure of duty, and will be liable to them for injuries in the same manner and to the same extent, as private corporations or individuals, as in the case of an injury to one working on the street, or of an injury to one working in the construction of a sewer.” 28 Cyc. 1266 (b). A municipal corporation “is liable as an employer, under the same circumstances as a private individual or corporation, wherever the injury complained of was received by the servant while participating dn work which was being done in connection with the exercise of a power conferred upon the corporation for the purpose of enabling it to carry out one or other of its merely ministerial functions.” 4 Labatt’s Master & Servant, (2d ed.) 4928, § 1615. See also Condon v. Chicago, 249 Ill. 596 (94 N. E. 976). There can be no confusion as to the law in this jurisdiction, under the clear ruling of the Supreme Court in Mayor &c. of Savannah v. Jordan, 142 Ga. 409, 412 (83 S. E. 109, Ann. Cas. 1916C, 240) : “Where a municipality is exercising an administrative function at the time an employee is injured, it owes its employee the duty of furnishing a safe place to work; and for a failure to do so, and where by reason of such failure an employee is injured without fault on his part, the corporation would be liable, under the same circumstances that a private individual or corporation would be. . . The authorities undoubtedly make a distinction between cases where injuries are occasioned by the agents of municipalities while engaged in the performance of governmental functions, or in private enterprises. Between the municipality- and the public the question of liability depends upon whether at the time of the injury the municipality is engaged in a governmental or ministerial duty. The relation of- a municipal corporation to its servants is the same as it is between any other master and servant,, provided it is engaged in the performance of ministerial functions.” The doctrine is well stated in Rhobidas v. Concord, 70 N. H. 90 (47 Atl. 82, 51 *349 L. R. A. 381, 85 Am. St. R. 604): “An injury to a servant of a municipal corporation employed on waterworks, by reason of the negligence of the municipal authorities in failing to furniáh him a reasonably safe place to work, to which he has a common-law right under his contract, gives him a right of action for damages, since his right, which is violated, is one which concerns an individual only, and not one which affects the whole community, or depends in any way upon the performance or non-performance of any public duty.”
3. In determining, therefore, whether the deceased assumed the risk arising from the condition of the old sewer which burst and brought about his death, we must appfy the same rules which obtain where the servant is at work for a private individual. In other words, the servant assumes no' more or greater risk because of the fact that he is serving a municipality than if he were serving a private individual or private corporation. Generally a servant assumes such risks incident to the employment as by exercise of ordinary care and prudence on his part he might discover; but this means only the usual and ordinary risks of the particular business which are obvious and patent, and does not ordinarily impose upon him the burden of making any active or positive effort to ascertain or discover defects or dangers, nor does he ordinarily assume the risks which he might have so ascertained or discovered by such investigation. See 2 Cooley on Torts (3d ed.), 1043, 1044. Again, it is essential to the assumption of risk that the servant should not only know of the defect from which the injury arises, but that he should appreciate the danger, or that the danger should be manifest to a man of ordinary intelligence and experience in the line of work in which he is engaged. An adult servant is. of course presumed to possess ordinary intelligence and capacity and to comprehend such dangers as are obvious to a person of ordinary understanding and experience; and should he rely upon any want of such capacity, he must show that the master had notice of his deficiency. An obvious and patent risk is one so plain that it would be instantly recognized by a person of ordinary intelligence who is familiar with the particular business. If the servant knows the danger, or if it is as obvious to him as to any one else, he obeys an order to work in a dangerous place at his own peril, and by undertaking to work in such a place and with such knowledge he as *350 sumes the risk and the master is not liable if injury results. However? a servant owes the duty of instant obedience; and unless the risk is so great and so obvious that no reasonably prudent man would have obeyed under the circumstances, he is ordinarily justified in obeying-an order from the master. 2 Cooley on Torts (3d ed.) 1137.
In a suit for personal injury by a servant against the master, where the right of recovery is dependent upon the negligence of the master in failing to inspect the premises and where the duty to inspct was one which rested upon the injured servant, the servant can not recover for an injury sustained because of his failure to inspect. Stewart v. Savannah Electric Go., 133 Ga. 10 (65 S. E. 110, 17 Ann. Cas. 1085). But even where no special duty rests upon the servant to inspect the premises, notwithstanding he may . 't be required to make any .active or positive effort to ascertain or dioccver defects or dangers in the place where he is directed to work “he must exercise his intelligence; and when a situation suggests investigation and inspection in order that its dangers may fully be disclosed, he is under the obligation of investigating and inspecting” (18 B. C. L. 642, § 137); but “latent or concealed dangers or defects he is not bound to discover, it being the duty of.the employer to warn him of these; but he is held to a knowledge of all such as are patent or obvious. While, however, open and obvious perils may not be made the foundation for a recovery for injuries sustained by reason thereof, it must appear, in order to defeat the employee’s action, that the danger was in fact obvious to one in his situation. Time and opportunity for inspection and investigation must have been afforded to him. Each case must be determined upon its own facts, the decision being properly within the province of the jury.” 18 B. C. L. 643, 644. But though an employee is bound to exercise ordinary diligence in observing perils by which he is menaced, he is entitled to proceed on the presumption that the employer has fulfilled the obligation to provide him with a safe place to work, and is not required to' anticipate the existence of possible dangers not clearly suggested to a man of ordinary intelligence, familiar with the business, by what is apparent or obvious in his surroundings. “The employee may presume that all precautions required of the employer have been taken, that all tools, appliances, and places are fit and suitable for *351 his use and occupancy, and that in all respects there will be an adherence to established and customary methods. In short, whenever the employer from the standpoint of knowledge is in a position.superior or dominant to that of the employee, the latter may rely-for his safety on the activity of the employer.” 18 It. C. L. 689, 690. The doctrine has been enunciated and applied with great frequency, that, “as a general rule, the servant is under no obligation either to inspect that part of the plant by which his safety may be affected, or to inquire into the details of the system adopted for the conduct of the master’s business, for the purpose of- discovering concealed dangers which would not be disclosed by superficial observation.” 4 Labatt’s Master & Servant (2d ed.), 3798. ‘ As already stated, although an employee may have knowledge of a physical fact, as of the defective condition of the place where he is required to work, by reason of which he sustains an injury, it does not follow that he appreciated the danger to which he was exposed thereby, since his general knowledge may not have been such as to give him any proper conception of the peril and- the condition may have have appeared perfectly harmless to him, and in such a case “his right of recovery is not defeated, for it is an appreciation of the danger, not mere knowledge of the defect by which the danger is threatened, that bars his action.” 18 R. C. L. 695.
It is the master’s duty to provide a reasonably safe place to work and to maintain it in a reasonably safe condition, and-the servant can rely on the performance of this duty, since ordinarily dangers arising from an unsafe place are not included within the risk of the business assumed by the servant. King Manufacturing Co. v. Walton, 1 Ga. App. 403 (3) (58 S. E. 115); Georgia Railroad v. Hunter, 12 Ga. App. 294 (7) (77 S. E. 176); Betts Co. v. Hancock, 139 Ga. 198 (77 S. E. 77). The fact that the servant assumed the risks of a particular employment will not exempt the master from liability for fafiure to furnish a safe place to work if there be no contributory negligence on the part of the servant. Middle Georgia &c. Ry. Co. v. Barnett, 104 Ga. 582 (2) (30 S. E. 771). It is insisted in this case, that, conceding the duty of the master to furnish a safe place to work, the servant must likewise exercise ordinary care in discovering defects therein (Chenall v. Palmer Brick Co., 117 Ga. 107 (4) (43 S. E. 443), and that un *352 der the facts alleged in the petition the defects in the old sewer were plainly visible, and therefore the servant was not in the exercise of ordinary care in going upon the old sewer, which was obviously defective, or in working near the same; and it is further insisted that the servant knew of the danger, or should have known of its existence by thq exercise of ordinary care, since he was bound to see dangerous conditions of the premises upon which he was at work that were open and visible (Walker v. Atlanta &c. R. Co., 103 Ga. 820, 822, 30 S. E. 503). We do not think, however, that these contentions are well taken. The injury to the plaintiff did not result from any danger, the existence of which was clearly or necessarily indicated to a man of ordinary intelligence by the cracks visible in the top and side of the sewer. Neither does it follow, as a matter of course or of law, that the deceased knew or could have known (from the presence of the cracks and from knowledge of the removal of earth from about it) that the old sewer was liable to burst from the pressure of water and sewage therein after the surrounding earth had been removed, since nothing is alleged which would serve to charge the decedent with knowledge as to any defects in the original construction of the sewer, or to put him upon notice that the same would not on account of such structural defects, or because of later ■ deterioration, be itself sufficiently strong, without support from beams of timber or from earth, to withstand such pressure as might reasonably be expected would be exerted against its walls, notwithstanding the existence of cracks therein. On the other hand, it might fairly be inferred from the allegations in the petition that the city knew or could have known, by reference to its records as to the details of the construction of this sewer, or by proper examination and expert inspection thereof before or at the time the supporting earth was removed, that the old sewer could not sustain the degree of pressure which would be normally exerted against its inner walls by the usual quantity of water and sewage passing through the same, if the surrounding earth should be removed and no other support substituted therefor. In other words, the city could have known the amount of strain which the sewer, alone and unsupported in the condition in which it was at the time, was calculated to support; and may have been negligent, after removing the surrounding earth and failing to substitute- other supports, in still *353 permitting an undiminished volume of water and sewage to pass through its channel, which perhaps it might have been possible to divert temporarily and by this or other means provide for .the reasonable safety of its servants working adjacent thereto by its direction. In addition to this, the petition expressly declared that the cracks visible in the sewer had been there for a long time, and the city was thus charged with notice of their existence and of the dangerous condition of the sewer which was-thereby indicated to the city — though not necessarily indicated to the servant, who had no knowledge as to the maimer in' which it had been constructed or of the strain it was calculated to endure. Although the general allegation is made that the cracks were visible, there is no assertion that they were visible to him at or before the time the plaintiff’s husband lost his life, or that he had ever actually observed or been in position to observe the same. In fact, there is nothing in the petition to suggest that his work required him to be where he could see the particular cracks, unless perhaps they were observable by him on the occasion when he ascended from the level of the new sewer’ he was constructing to” the top of the old sewer, which was “higher than a man’s head,” immediately before the sewer burst and his death ensued. Had the injury to the plaintiff in this case resulted from catching his foot or hand in a crack in the old sewer, which was plainly visible to him, or if he had been injured by stepping into a crack on top of the sewer which was either plainly visible to him, or would have been visible if he had exercised ordinary care in selecting a path along said sewer and in planting his feet therein, such negligence on his part might have barred any recovery; but even if, under the allegations in the petition, the defects in the sewer were or should have been .visible to him, it does not appear that he approached near any defective part of the structure at the time of the injury, but his death followed in consequence of the bursting of the sewer because the supporting earth had been removed from around it, and because on account of its. defective construction it was too weak to endure the strain of the large (unreduced) volume of water and sewage which the city allowed to pass through it, notwithstanding knowledge of its defective condition. As already said, the cracks in the sewer, if visible to the decedent, would not necessarily convey to Mm knowledge that the sewer3 without the support of the eárth which had *354 been, removed from around it, had become unsafe or dangerous.' At all events, whether the employee, having or being -chargeable with knowledge of the defects in the old sewer, was guilty of negligence in remaining near the same or in continuing his work at the unsafe place without seeing that the defects were repaired, or otherwise seeking to protect himself, or was negligent in attempting to ascend to a position on top of the defective sewer, would be questions for the jury, and not for determination on demurrer; for upon the jury must necessarily devolve the inquiry whether persons of ordinary prudence who had observed the visible defects in the sewer would have believed such defects dangerous, or should have been apprised of the danger indicated thereby and should have exercised any greater degree of care than may have been exercised by the decedent in guarding against the danger. “Whether where an employee, after having knowledge of defects in machinery or those which may exist on the premises, or being cheargeable with such knowledge, continues to work with or upon the same, without reporting such defects to the master, or making any effort to repair the same, or otherwise seeking to shield himself from dangers attendant upon the existence of such defects; he is guilty of negligence, is a question to be determined by the inquiry, whether a person of ordinary prudence would have believed the defects dangerous to, or increased the risks of, the service in which he was engaged.” Walker v. Atlanta &c. R. Co., supra. The servant had the right to assume that the place where the master directed him to work was safe, and no burden rested upon him to do more than exercise ordinary care in determining if the place was in fact safe; and he was not, under the facts alleged, required to make any positive investigation to discover possible or hidden dangers, nor did he assume risks which he might possibly have discovered as the result of such investigation, hut assumed only risks that were obvious and patent to a man of ordinary intelligence familiar with the business. As said heretofore, he should use reasonable means to inform himself concerning the perils of his employment and as to the safety of the place where he is required to work, and must exercise his intelligence; and where a situation suggests investigation and inspection, the burden is generally upon him to pursue such investigation. It can not be said, however, as a matter of law, that under the allegations *355 under consideration the presence of the cracks in the oíd sewer were sufficient to even suggest to the servant that the place was unsafe and dangerous and therefore to require -of him any investigation; since as aforesaid it is clearly inferable from these allegations that he had no knowledge of the defective construction of the old sewer or of its insufficiency to support the strain to which it was subjected at the time he ascended it, and enough is alleged to show that the city knew or should have known by proper examination and inspection of its dangerous condition. What thé proof may show is of course another matter, and one with which we have no present concern.
The case of Love v. Atlanta, 95 Ga. 129, 133 (22 S. E. 29, 51 Am. St. R. 64), cited by counsel for the plaintiff in error to support the proposition that no municipal liability arises on account of the failure of the officers, agents, or servants of the city to exercise ordinary care in safeguarding those employed in the construction and maintenance of sewers designed to preserve the public health, aside from all else, is clearly distinguishable on its facts from the case made by the petition under consideration. In that ease the plaintiff was injured while passing along the streets of the 'city, through the negligence of a servant of the defendant in permitting an animal attached to a garbage cart in charge of said servant to run away and collide with the buggy of the plaintiff. The decision in that case, that no right of action existed, was predicated upon the fact that the mule and cart causing the damage were actually in use at the time by the city under the direction of its health board, and the servant of the city charged with driving the cart was then employed in cleaning the streets and removing therefrom such offensive substances as usually accumulate in streets of thickly populated cities, which if not removed woit'ld endanger the public health. The court held that in removing the garbage the driver and the mule were engaged-in-the performance of a governmental and not a ministerial function. It would be stretching the decision in the Love case beyond the bounds of rpason, and certainly would be in principle opposed to the uniform rule of liability fixed in other jurisdictions, as well as in this," to hold that where one employed by á municipality was injured through its negligence while he was engaged-in the construction of something to be thereafter used in the preservation of the public *356 health, no municipal liability would attach, or that no liability would arise on account of dangers resulting from the previous defective construction of an instrumentality intended and then being used "to preserve the public health.. In Mayor &c. of Savannah v. Jordan, ■ supra, the following ruling in the Love case is quoted: “In order to exempt a city from liability, it is not sufficient to show that the particular work, from the negligent performance of which by the servants of the city a citizen was injured, was being performed under the direction of the health authorities; but it must be shown that the particular work so being done was connected with or had reference to'the preservation of the public health.” In other words, even under the rule in the Love case it was held necessary to show Tooth that the- work being done had reference to the preservation of the public health and was also being performed under the direction of the health authorities. This would serve to still further distinguish that case from the case under consideration.

Judgment affirmed.

Jenkins and Luke, JJ., concur.